**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 00-40731

---

RANDALL COGGIN,

Plaintiff-Appellee,

VERSUS

LONGVIEW INDEPENDENT SCHOOL DISTRICT, ET AL,

Defendants,

LONGVIEW INDEPENDENT SCHOOL DISTRICT,

Defendant-Appellant.

---

Appeal from the United States District Court
For the Eastern District of Texas, Tyler Division

---

April 17, 2002

Before EMILIO M. GARZA, PARKER, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

## I.  Introduction

Mr. Randall Coggin, a public school employee, brought this § 1983 suit against his employer, a Texas independent school district, because its board of trustees terminated his employment contract for cause without any kind of a hearing.  After a bench trial, the district court rendered judgment in favor of Coggin.  We

1

affirm. Because the school board was the final policy and decision maker with respect to the discharge of employees for cause, the board's deliberate choice of discharging the employee without a hearing was the moving force and direct cause of the unconstitutional deprivation of Coggin's property right without due process of law. Contrary to the school board's assertion, Coggin timely filed his request for a hearing under state law and did not waive his federal constitutional right to a hearing. And opposed to the school board's alternative argument, the Commissioner's wrongful refusal to grant Coggin a hearing under state law was not the moving force that deprived Coggin of his property right. The school board, not the Commissioner, terminated Coggin's employment contract. The Commissioner's failure to appoint a hearing examiner did not prevent the school board from complying with the minimal requirements of federal due process before discharging Mr. Coggin. Consequently, there was no direct causal link between the Commissioner's conduct and the school board's deliberate decision to destroy Coggin's property interest without first granting him some form of a hearing.

## II. Facts and Procedural Background

Randall Coggin worked for the Longview Independent School District (LISD) for more than thirty years. From 1983 until his discharge on September 13, 1999, Coggin supervised the LISD Career

2

and Technology Education department.  At the time of his discharge, Coggin was employed under a two-year term contract spanning the 1998-1999 and 1999-2000 academic years.  Before receiving notice of his proposed termination, his performance appraisals were generally complimentary.  On August 12, 1999, however, Coggin received a letter from the LISD's new superintendent notifying him that the school board proposed to terminate his employment contract for engaging in various alleged improprieties, including: (1) sexually harassing female subordinates; (2) using LISD resources for personal benefit; (3) impeding the LISD's investigation of his behavior; and (4) falsifying asbestos records.

Under the Texas Education Code, a school board has the power to terminate a term contract and discharge a teacher at any time "for good cause as determined by the board."[1]  Prior to terminating a term contract, however, the board must give the teacher notice of its proposed action.[2]  If the teacher desires a pre-termination hearing under state law, he must file a written request with the commissioner of education within fifteen days of receiving notice of his proposed termination.[3]  Within forty-five days of receiving a timely request for a hearing, the commissioner must assign a hearing examiner to conduct a hearing and recommend findings of

---

[1] Tex. Educ. Code Ann. § 21.211(a)(1) (Vernon 1996).

[2] Id. § 21.251(a)(1).

[3] Id. § 21.253.

fact, conclusions of law, and, if appropriate, the granting of relief.[4]  The school board must timely meet to consider the recommendation and record of the hearing examiner and allow each party to present oral argument.[5]  Within ten days of that meeting, the board must announce a decision that includes findings of fact and conclusions of law, and that may include a grant of relief.[6] The board may adopt, reject, or change the hearing examiner's conclusions of law or proposal for granting relief, and it may reject or change the hearing examiner's finding of facts not supported by substantial evidence in the record.[7]

Pursuant to the Education Code's requirements, the LISD's notice of proposed termination informed Coggin (1) that he had fifteen days to file with the Commissioner a written request for a hearing before a hearing examiner and (2) that he must give the LISD a copy of any such request.  Thus, having received notice of his proposed termination on August 12, 1999, Coggin had until August 27, 1999 to file his request for a hearing.  On August 24, Coggin deposited his written requests for a hearing examiner with the U.S. Postal Service via certified mail, properly stamped and addressed to the Commissioner and the school board.  The school

---

[4] Id. § 21.257.

[5] Id. § 21.258.

[6] Id. § 21.259.

[7] Id.

board received a copy of Coggin's request for a hearing examiner on August 26, but the Commissioner averred that he did not receive the request until August 30. Because the Commissioner mistakenly thought that Coggin's request must have been "received," rather than "filed," by August 27, 1999, he refused to appoint a hearing examiner. On September 2, 1999, the Commissioner mailed a letter to Coggin stating that (1) the Commissioner had received Coggin's written request for a hearing; (2) the request was dated and postmarked before the August 27 deadline; (3) the Commissioner received the request on the third day following the deadline; but (4) the Commissioner would not assign a hearing examiner because Coggin's request was not received on time. The Commissioner also mailed a copy of that letter to the LISD's attorney.[8]

---

[8] The letter that the TEA's deputy chief counsel mailed to Coggin and the LISD reads as follows:

> To the Party and Counsel Addressed:
>
> This acknowledges receipt of Mr. Coggin's request for the assignment of a certified hearing examiner. It is noted that his letter asserts that notice of the proposed termination was received by him on August 12, 1999. The letter requesting the assignment of an examiner was dated August 17, 1999, postmarked August 12[sic], 1999 and received on August 30, 1999.
>
> In order to be timely filed, the request must have been received by August 27, 1999. By filing the request late, Mr. Coggin has failed to invoke the hearing process.
>
> No hearings [sic] examiner will be assigned based upon untimely filing.

The letter incorrectly stated that Mr. Coggin's request was

5

Coggin's attorney and the Commissioner exchanged several argumentative communications, but the Commissioner steadfastly refused to appoint a hearing examiner. On September 13, 1999, the board, without notice to Coggin or any kind of hearing, adopted a resolution discharging Coggin as an employee of LISD. The resolution stated that "the reasons set out in the notice of proposed termination . . . are good cause for termination." The board's resolution also noted that the Commissioner had received Coggin's request on August 30, 1999 but that no hearing was held because the Commissioner considered the request to have been untimely received.

In short, the board knew that Coggin mailed his request to the Commissioner prior to the August 27 filing deadline, and that the Commissioner received it on August 30. Therefore, when the board discharged Coggin for cause it knew that (1) he had not been given any kind of hearing; (2) he had mailed his request for a hearing before the filing deadline; and (3) the Commissioner received his request for a hearing within three days after the deadline.

On November 12, 1999, Coggin brought suit against the LISD, the Texas Education Agency (TEA), and the Commissioner under 42 U.S.C. § 1983 for depriving him of his property without due process of law. After the district court expressed its opinion that the

_____

postmarked on August 12, 1999 rather than August 24, 1999. Notwithstanding this error, the LISD had notice that Mr. Coggin mailed his letter before the August 27, 1999 deadline.

TEA and the Commissioner had a valid Eleventh Amendment defense, Coggin dismissed his claims against them and the case proceeded solely against the LISD.[9] Following a bench trial, the district court concluded that (1) Coggin timely filed his request for a hearing as required by state law; (2) the board had notice that Coggin had not received a hearing despite his timely request; (3) the board deprived Coggin of his property without due process when it terminated his employment contract without any kind of a hearing; (4) the LISD failed to prove that Coggin had engaged in the alleged misconduct and therefore had no cause to terminate his employment contract; and (5) Coggin was entitled to $215,894 in damages and attorney's fees. The LISD appealed.

The LISD asserts on appeal that Coggin waived his right to a due process hearing by failing to timely file his request for a hearing before a hearing examiner. Alternatively, LISD argues that although Coggin was deprived of his property without due process of law, the deprivation was caused by the Commissioner's refusal to appoint a hearing examiner, not by the school board's termination of his employment contract without a hearing.

## III. Discussion

---

[9] In Texas, independent school districts are municipal governmental entities. Tex. Educ. Code Ann. § 11.151. The TEA is a state agency headed by the commissioner of education. Id. §§ 7.002, 7.055. The commissioner is appointed by the governor with the advice and consent of the state senate. Id. § 7.051.

## A. Standard of Review.

The standard of review for bench trials is well established. We review the district court's factual findings for clear error and its legal conclusions de novo.[10]

## B. Coggin Did Not Waive His Right to a Hearing.

Coggin complied with the state's procedural requirements for requesting a hearing before a hearing examiner. He timely filed his request for a hearing with the Commissioner of Education. He did not acquiesce in the board's termination of his contract right without some kind of a hearing. Therefore, he did not waive his right to some kind of hearing before the school board deprived him of his property right.

Section 21.253 of the Texas Education Code states that "[a] teacher must *file* a written request for a hearing under this subchapter with the commissioner not later than the 15th day after the date the teacher receives a written notice of the proposed action."[11] Finding no definition of the word "file" in the Texas Education Code or in caselaw expressly pertaining to § 21.253, the district court applied an <u>Erie</u> analysis by undertaking to interpret the provision as would the Supreme Court of Texas. The court first

---

[10] <u>See</u> <u>Kona Technology Corp. v. S. Pac. Transp. Co.</u>, 225 F.3d 595, 601 (5th Cir. 2000).

[11] Tex. Educ. Code Ann. § 21.253 (emphasis added).

noted that "file" cannot mean "receive" because other provisions of the Texas Education Code specifically use the word "receive" when actual receipt is required.[12]  Second, the court noted that the Supreme Court of Texas has applied a ten-day mailbox rule[13] to similarly worded statutes.  In Ward v. Charter Oak Fire Insurance Co., for example, the Texas high court held that a person "files" a timely notice with the Industrial Accident Board (IAB) if he mails the notice before the filing deadline and the IAB receives it within ten days of the deadline.[14]  The Ward court reasoned that this reading of the IAB's notice provision "coincides with the notice provisions of Rule 5 of the Texas Rules of Civil Procedure."[15]  Third, the district court noted that § 157.1050(b) of the Texas Administrative Code, which governs hearings before the commissioner of education, explicitly provides for a mailbox rule. That section states that "[a] document shall be timely filed if it is mailed on the filing deadline . . . and was received . . . by

---

[12] See, e.g., Tex. Educ. Code Ann. § 21.254 (requiring the commissioner to appoint a hearing examiner not later than the tenth business day after the commissioner *receives* the request for a hearing); Tex. Educ. Code Ann. § 21.257 (requiring completion of the hearing not later than forty-five days after the commissioner *receives* the request for a hearing).

[13] See Black's Law Dictionary 964 (7th ed. 1999) (defining "mailbox rule" as "[t]he principle that when a pleading or other document is filed or served by mail, filing or service is deemed to have occurred on the date of mailing").

[14] 579 S.W.2d 909, 910-11 (Tex. 1979).

[15] Id. at 911.

the close of business on the third calendar day following the filing deadline."[16]  Finally, the district court acknowledged that the state legislature was aware of these mailbox rules when it enacted the § 21.253 filing requirement.

Based on the foregoing state authorities, the district court concluded that the Texas Supreme Court would decide that a three or ten-day mailbox rule was implicitly incorporated in § 21.253 of the Texas Education Code; that Coggin's request was filed timely under the mailbox rules because it was mailed before the filing deadline and received within three days of the deadline; that Coggin therefore had not waived his right to some kind of pre-termination hearing; and that at the time the LISD discharged Coggin it knew that he had not had any kind of a hearing and was charged with knowledge that Coggin had timely filed his request for a hearing.[17] For the same reasons, we agree with and adopt the district court's

---

[16] Tex. Admin. Code Ann. § 157.1050(b).

[17] It is a fundamental tenet of Texas law that all persons are conclusively presumed to know the law. See, e.g., Eades v. Drake, 332 S.W.2d 553, 557 (Tex. 1960) (stating that people are presumed to have knowledge of both constitutional and statutory law); Willis v. Bydalek, 997 S.W.2d 798, 803 (Tex. App.--Houston [1st Dist.] 1999, pet. denied) ("All persons are presumed to know the law."); Hayes v. State, 672 S.W.2d 246, 248 (Tex. App.--Beaumont 1984, no pet.) ("The courts of this State have long held that persons are presumed to know the law and ignorance of the law excuses no man."); Miller v. State, 53 S.W.2d 838, 840 (Tex. Civ. App.–Amarillo 1932, writ ref'd) (stating that a mayor and city commissioners are presumed to have knowledge of municipal laws); see also 35 Tex. Jur. § 123, at 240-41 (3d ed. 1984) (noting that the presumption "is based on the sound public policy that all persons should be held responsible for their acts without regard to their actual knowledge of the law.").

analysis, interpretation, and application of state law, as well as the district court's conclusion that Coggin filed his request timely and did not waive his right to a hearing.

The LISD does not cite any contrary state authority or specifically challenge any element of the foregoing Erie analysis, which forms the basis of the conclusion by the district court and this court that Coggin complied with the state procedural requirements for requesting a hearing before a hearing examiner. Nor does the LISD challenge the reasons supporting the district court's conclusions that Coggin's filing was timely under the mailbox rule and that he had not received the hearing to which he was entitled under state law, or a hearing of any kind. Instead, the LISD simply asserts its own conclusion that Coggin did not file his request timely and therefore waived his right to a hearing. The LISD fails to support its assertion with any authority or reasoning. Because the LISD makes no attempt to demonstrate any particular error in the district court's thorough and well-reasoned opinion, we conclude that the LISD's assertion is unfounded and that it has waived argument on this issue.[18]

The LISD correctly, but irrelevantly, notes that in Logan v. Zimmerman Brush Co.,[19] the Supreme Court acknowledged that states

---

[18] See Johnson v. Sawyer, 120 F.3d 1307, 1315-16 (5th Cir. 1997) (noting that arguments raised "without supporting argument, authority, or citations to the record" are waived).

[19] 455 U.S. 422 (1982).

may impose reasonable procedural requirements for invoking due process rights:

> The State may erect reasonable procedural requirements for triggering the right to an adjudication, be they statutes of limitations, or, in an appropriate case, filing fees. And the State certainly accords due process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule.[20]

The LISD cannot rely on this passage, however, because Coggin complied with all of the Texas procedural requirements for triggering his right to a hearing. Moreover, while the passage expresses a valid rule of law, it is not the principal holding of Logan. The Supreme Court held in Logan that the plaintiff's property right had been destroyed without due process of law because he, like Coggin, had been denied a hearing despite his compliance with the state filing requirement.[21] Therefore, the main holding in Logan is consistent with and supports Coggin's claim that he was deprived of his property without due process of law.

## C. The LISD's Discharge of Coggin With Knowledge That He Had Not Been Afforded a Hearing Was the Moving Force Behind the Deprivation and Injury Complained of.

The LISD was obliged under the Constitution not to destroy Coggin's property right of continued employment without due process of law. Because the board is the elected governing body of the

---

[20] Id. at 437 (internal citations omitted).

[21] Id. at 428-37.

12

school district and its final policy and decision maker with respect to terminating employment contracts for cause, the board's direct official action in terminating Coggin's contract, although it knew he had neither received a hearing nor waived his right to one, deprived Coggin of his property right without due process of law.

It is undisputed that under Texas law Coggin had a property right in continued employment that could not be deprived under color of state law without due process of law.[22] The district court held, and the LISD concedes in its alternative argument, that the termination of Coggin's employment contract without any kind of a hearing deprived him of his constitutionally protected property interest in continued employment. The LISD's alternative argument is that the Commissioner's refusal to appoint a hearing examiner for Coggin, rather than the school board's termination of his employment without a hearing, was the direct cause or moving force behind the deprivation of his property right and his injury.

Title 42 U.S.C. § 1983 (1994) provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other

---

[22] See Loudermill, 470 U.S. at 538-39; see also Tex. Educ. Code Ann. § 21.211(a) (Coggin was a "term contract" employee who could only be fired for "good cause" or for a "financial exigency.").

13

proper proceeding for redress.

The Supreme Court held in <u>Monell v. Department of Social Services</u>[23] that municipalities and other local governmental bodies are "persons" within the meaning of § 1983.  It has also recognized that a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor.[24]  Instead, in  <u>Monell</u> and subsequent cases, the Court has required a plaintiff seeking to impose § 1983 liability on a municipality to identify a municipal "policy" that caused the plaintiff's injury.[25]  Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its legislative body or of those officials whose acts are fairly attributable to the municipality.

When a municipality's final policy and decision maker in a single action directly and intentionally deprives a person of a federal constitutional right, however, the person need not show that a policy or custom caused his injury in order to recover.  In such as case, the municipality's action is deemed to be the direct

---

[23] 436 U.S. 658, 689 (1978).

[24] <u>Board of County Commissioners v. Brown</u>, 520 U.S. 397, 402 (1997).

[25] <u>See</u> <u>Monell</u>, 436 U.S. at 694; <u>Brown</u>, 520 U.S. at 403; <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480-81 (1986); <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989).

cause or moving force behind the deprivation of right and injury.[26]

The Supreme Court made this point clear in <u>Board of County</u>

<u>Commissioners v. Brown</u>:

> [P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, *the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.*[27]

Thus, the Court has recognized § 1983 causes of action based on a single decision attributable to the municipality, because evidence that the municipality itself deprived the plaintiff of his federal rights is enough to prove § 1983 liability.[28]  The Court has

---

[26]  <u>See</u> <u>Brown</u>, 520 U.S. at 404 ("The plaintiff must . . . demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must . . . demonstrate a direct causal link between the municipal action and the deprivation of federal rights.  *Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward.*"(emphasis added)); <u>see also</u> <u>infra</u> note 27.

[27] 520 U.S. at 405 (emphasis added).  The Court has "held the policy requirement satisfied where no rule has been announced as 'policy' but federal law has been violated by an act of the policymaker itself.  In this situation, the choice of policy and its implementation are one, and the first or only action will suffice to ground municipal liability simply because it is the very policymaker who is acting." <u>Brown</u>, 520 U.S. at 417-18 (Souter, J., dissenting)(citing <u>Pembaur</u>, 475 U.S. at 480-81; <u>Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 250-52 (1981); <u>Owen v. City of Independence</u>, 445 U.S. 622, 625-30 (1980)).

[28]  <u>See, e.g.</u>, <u>Brown</u>, 520 U.S. at 405.

15

characterized these cases as "present[ing] no difficult questions of fault and causation," and has cited <u>Owen v. City of Independence</u>,[29] <u>Newport v. Fact Concerts, Inc.</u>,[30] and <u>Pembaur v. City of Cincinnati</u>[31] as examples.[32] In <u>Brown,</u> the Court explained that:

> <u>Owen v. Independence</u> and <u>Newport v. Fact Concerts, Inc.</u> involved formal decisions of municipal legislative bodies. In <u>Owen</u>, the city council allegedly censured and discharged an employee without a hearing. In <u>Fact Concerts</u>, the city council canceled a license permitting a concert following a dispute over the performance's content. . . . *Because fault and causation were obvious in each case, proof that the municipality's decision was unconstitutional would suffice to establish that the municipality itself was liable for the plaintiff's constitutional injury.*
> Similarly, <u>Pembaur v. Cincinnati</u> concerned a decision by a county prosecutor, acting as the county's final decisionmaker, to direct county deputies to forcibly enter petitioner's place of business to serve *capiases* on third parties. . . . *The conclusion that the decision was that of a final municipal decisionmaker and was therefore properly attributable to the municipality established municipal liability. No questions of fault or causation arose.*[33]

<u>Owen v. City of Independence</u>,[34] was decided on facts similar to the present case but involved the deprivation of liberty of a

---

[29] 445 U.S. 622 (1980).

[30] 453 U.S. 247 (1981).

[31] 475 U.S. 469 (1986).

[32] <u>Brown</u>, 520 U.S. at 405.

[33] <u>Id.</u> at 405-06 (internal citations omitted) (emphasis added).

[34] 445 U.S. 622.

16

chief of police through his defamation and discharge by the city without a hearing. In <u>Owen</u> the city – through the unanimous resolution of the City Council – released to the public an allegedly false statement impugning its chief of police's honesty and integrity. The chief of police was discharged the next day. "The Council's accusations received extensive coverage in the press, and even if they did not in point of fact 'cause' petitioner's discharge, the defamatory and stigmatizing charges certainly occurred in the course of the termination of employment."[35] Nevertheless, the city twice refused the chief of police's request for a hearing and an opportunity to clear his name. The Supreme Court decided that "[u]nder the circumstances, we have no doubt that the Court of Appeals correctly concluded that the city's actions deprived petitioner of liberty without due process of law."[36]

Similarly, in <u>City of Newport v. Fact Concerts, Inc.</u>,[37] the City of Newport was held liable for a single, direct action of its city council that violated a citizen's constitutional rights. In that case, an organization licensed by the city to present musical concerts recovered damages against the city under § 1983 because the city's cancellation of its license amounted to content-based

---

[35] <u>Id.</u> at 634 n.13 (internal quotations omitted).

[36] <u>Id.</u> at 634.

[37] 453 U.S. 247.

17

censorship violating the organization's rights to free expression and due process.[38]

The Supreme Court in <u>Pembaur v. City of Cincinnati</u>,[39] held that a county prosecutor was acting as the final decisionmaker for the county when he ordered deputy sheriffs to forcibly enter a doctor's clinic without a warrant, and the county could therefore be held liable under § 1983.  The Court explained that "a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body – whether or not that body had taken similar action in the past or intended to do so in the future – because even a single decision by such a body unquestionably constitutes an act of official government policy."[40]  Recognizing that "the power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level,"[41] the Court concluded that "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be

---

[38] <u>Id.</u> at 254.

[39] 475 U.S. 469.

[40] <u>Id.</u> at 480 (citing <u>Owen</u> and <u>Fact Concerts</u> as follows: "<u>Owen v. City of Independence</u>, 445 U.S. 622 (1980) (City Council passed resolution firing plaintiff without a pre-termination hearing.); <u>Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247 (1981) (City Council canceled license permitting concert because of dispute over content of performance.).

[41] <u>Id.</u> at 480

taken only once or to be taken repeatedly."[42]  Consequently, the Court concluded that municipal liability under § 1983 attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[43]

Applying the foregoing Supreme Court decisions and reasoning to the present case, we conclude that liability attaches to the LISD for its deprivation of Coggin's property right without a hearing as required under due process.  The school board was the body responsible for establishing final policy and making the final decision with respect to the termination of its employee for cause.[44]  Although the board knew that Coggin had not been afforded

---

[42] Id. at 481.

[43] Pembaur, 475 U.S. at 483 (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)).

[44] The board of trustees of the LISD unquestionably is the final policy and decision maker with respect to the hiring school district employees, the determination of cause, and the decision to terminate an employee's term contract.  The board has the exclusive right to terminate an employee's term contract and to discharge or suspend a teacher at any time for (1) good cause as determined by the board or (2) a financial exigency that requires a reduction in personnel.  Tex. Educ. Code Ann. § 21.211(a).  Furthermore, the Texas Education Code obligates the board of trustees for each school district to adopt a policy for the employment of school district personnel.  Id. § 11.163(a).  The board of trustees may formulate and approve term contracts with school district personnel containing any provisions consistent with the Education Code.  Id. § 21.205.  Consequently, the school board in the present case exercised its authority as the final policy and decision maker for the LISD when it unanimously decided to terminate Coggin's contract for cause.

19

any kind of a hearing, and that he had not waived his right to one, it made a deliberate choice to follow the course of discharging him without a hearing from among various alternatives.

The LISD's intentional discharge of Coggin in spite of its knowledge that he had not had any kind of hearing necessarily was the moving force behind Mr. Coggin's deprivation and injury. This case, like <u>Owen</u>, <u>Newport</u>, and <u>Pembaur</u>, "present[s] no difficult questions of fault and causation."[45]  "[T]he conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains."[46] The Commissioner's failure to appoint a hearing examiner cannot be considered the moving force or the directly linked cause of Coggin's deprivation and injury. The Commissioner's failure merely caused Coggin to lose his initial state examiner's hearing; it did not deprive him of his constitutionally protected property right.

Although the LISD contends that it had no alternative to discharging Coggin without a hearing, it provides no authority or valid reasoning to support its argument. Moreover, we find that several constitutionally valid alternatives were available. For example, the LISD could have informed the Commissioner that

---

[45] <u>Brown</u>, 520 U.S. at 405.

[46] <u>Id.</u>

20

Coggin's request was timely, urged the Commissioner to appoint a hearing examiner, and simply waited until Coggin had a hearing before finally deciding to fire him. As the district court observed, nothing in Texas law *required* the LISD to terminate Coggin's contract; rather, the Texas Education Code provides that a board *may* terminate a teacher's contract for "good cause."[47] If waiting for the Commissioner to comply created a situation "where the employer perceive[d] a significant hazard in keeping the employee on the job,"[48] the LISD could have suspended him without pay until he had been constitutionally discharged or reinstated with back pay.[49] Or the LISD could have issued Mr. Coggin another notice of proposed termination, giving the Commissioner another opportunity to grant a timely request for a hearing examiner under state law. In lieu of all other alternatives, before destroying his property right, the LISD could have given Mr. Coggin a due process hearing as required by the federal Constitution.

The LISD mistakenly contends that Texas law prohibited it from conducting a due process hearing to comply with its federal constitutional obligations. We see nothing in the state statutes or caselaw that would prohibit the LISD from complying with federal law. If there were something, of course, the state law would have

---

[47] Tex. Educ. Code Ann. § 21.211(a).

[48] Loudermill, 470 U.S. at 544-45.

[49] Id.; see also Tex. Educ. Code Ann. § 21.211(b) & (c).

to yield to federal law under the Supremacy Clause.[50]  As the Supreme Court stated in <u>Vitek v. Jones</u>, "minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action."[51]  The Supreme Court in <u>Loudermill</u> clarified the relationship between the minimum requirements of federal procedural due process and state legislative power:

> The right to due process is conferred, not by legislative grace, but by constitutional guarantee.  While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.
> In short, once it is determined that the Due Process Clause applies, the question remains what process is due. The answer to that question is not to be found in the [Texas] statute.[52]

We conclude that there is nothing in the state law which conflicts with or diminishes the LISD's obligation to comply with the minimum requirements of federal due process when terminating its public employees' property interests.  Some kind of hearing prior to the

---

[50] <u>See</u> <u>Geier v. Amer. Honda Motor Co.</u>, 529 U.S. 861, 894 (2000) ("When a state statute, administrative rule, or common-law cause of action conflicts with a federal statute, it is axiomatic that the state law is without effect.") (citing U.S. Const. art. VI, cl. 2; <u>Cipollone v. Liggett Group, Inc.</u>, 505 U.S. 504, 516 (1992)).

[51] 445 U.S. 480, 491 (1980); <u>accord</u> <u>Logan</u>, 455 U.S. at 432 (holding that federal due process requirements limit a state legislature's authority to define procedures for protecting even state-created entitlements).

[52] <u>Id.</u> (internal quotations and citations omitted) (first alteration in the original).

discharge of an employee who has a constitutionally protected property interest in employment is required.[53]  Although the pre-termination "hearing" is necessary, it does not have to be elaborate.  The Supreme Court has indicated that "'[t]he formality and procedural requisites for the hearing can vary, depending on the importance of the interests involved and the nature of subsequent proceedings.'"[54]  "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action."[55]  "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."[56]

Contrary to the LISD's arguments, the Texas Supreme Court's decision in <u>Montgomery Independent School District v. Davis</u>[57] does not prohibit an independent school district from holding a due process hearing in accordance with the federal constitution.  The case does not involve any federal due process issues.  The state

---

[53] <u>Id.</u> at 542 (citing <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569-70 (1972) and <u>Perry v. Sindermann</u>, 408 U.S. 593, 599 (1972)).

[54] <u>Id.</u> at 545 (quoting <u>Boddie v. Connecticut</u>, 401 U.S. 371, 378 (1971) and citing <u>Cafeteria & Rest. Workers Union v. McElroy</u>, 367 U.S. 886, 894-895 (1961)).

[55] <u>Id.</u> (quoting <u>Mathews v. Eldridge</u>, 424 U.S. 319, 343 (1976)).

[56] <u>Id.</u> at 545 (citing <u>Arnett v. Kennedy</u>, 416 U.S. 134, 170-71 (1974) (Powell, J., concurring in part and concurring in the result) and <u>Goss v. Lopez</u>, 419 U.S. 565, 581 (1975)).

[57] 34 S.W.3d 559 (Tex. 2000).

law issue presented was whether the school board in a proceeding governed only by state law could re-weigh the evidence after the state appointed hearing examiner had conducted a hearing and made factual findings.[58] <u>Davis</u> is thus inapposite to the present case.[59]

**D.  Arguments Not Reached.**

We do not address the LISD's additional arguments that the district court made various erroneous and unnecessary findings and conclusions because the court erred in determining that the LISD violated Coggin's due process rights.  We have concluded that the district court did not err.

### IV. Conclusion

For the reasons assigned, the judgment of the district court is AFFIRMED.

ENDRECORD

---

[58] <u>Id.</u> at 560.

[59] Tex. Educ. Agency, <u>Reyes v. Roma Indep. Sch. Dist.</u>, Docket No. 083-R2-199(Comm'r Educ. Feb. 25, 2000), a state administrative law case relied upon by the LISD is also irrelevant.  Like <u>Davis</u>, it presents no federal due process question.  The case deals only with the state procedural law question of whether a school board may conduct its own evidentiary hearing for purposes of a proceeding governed by state law after the commissioner has denied an employee's request for a hearing examiner.

24

EMILIO M. GARZA, Circuit Judge, dissenting:

In this case, Randall Coggin asserts that his right to procedural due process was violated when he was terminated without a prior hearing. Specifically, Coggin claims that he complied with Texas's reasonable procedural requirements for invoking his right to a due process hearing, but was denied one because of a mistake of law made by the Commissioner of the Texas Education Agency (TEA). Assuming *arguendo* that Coggin was indeed deprived of his right to procedural due process, that alone is not sufficient to support his claim against the LISD under § 1983.[60] In order to prevail against the LISD, Coggin must also establish that the LISD *caused* the deprivation of his procedural due process right. Because I believe Coggin has failed to establish this causal connection, I respectfully dissent.

Section 1983 creates a cause of action against any person who, under color of law, "subjects, or causes to be subjected," a person "to the deprivation of [a constitutional right]." Specifically, the text of § 1983 reads:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In order to prevail on a § 1983 claim, this court has repeatedly held that it is not sufficient for a plaintiff to merely establish a violation of one of his constitutional rights. A plaintiff must also show a causal connection between the deprivation of that right and the actions of the

---

[60]Because Coggin cannot establish causation sufficient to proceed against the LISD on his § 1983 claim, we need not and should not reach the question of how to interpret the term "file" in § 21.253 of the Texas Education Code, which is purely a matter of state law.

defendant against whom relief is sought. *See, e.g., Neubauer v. City of McAllen*, 766 F.2d 1567, 1571 n.11 (5th Cir. 1985) (reversing judgment against some of the defendants in § 1983 action because plaintiff failed to show that they personally caused the deprivation of a constitutional right); *Irby v. Sullivan*, 737 F.2d 1418, 1425 (5th Cir. 1964) ("To be liable under section 1983, a [defendant] must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violations sought to be addressed."). This causation requirement applies with equal force in cases where a § 1983 action is premised on a violation of procedural due process. *Reimer v. Smith*, 663 F.2d 1316, 1322 n.4 (5th Cir. 1981) ("It is axiomatic that a plaintiff cannot succeed in a § 1983 action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property.").

The majority concedes that Coggin must establish causation to prevail, but contends that he has met that burden because the LISD made the final decision to terminate him knowing he had not received a hearing. *See* Maj. Op. at 13. Thus, the majority concludes, the LISD deprived Coggin of his property without due process of law. The problem with the majority's analysis, however, is that it focuses on the wrong causation issue. The majority bases its causation analysis on who deprived Coggin of his *protected property interest*, when the real issue is who deprived Coggin of his *procedural due process right*. *See* Maj. Op. at 20 (stating that the termination of Coggin's employment contract by the LISD, and not the Commissioner's refusal to appoint a hearing examiner, is what deprived Coggin of "his constitutionally protected property right").

To better understand why the majority's reasoning fails, we must first understand what constitutes a violation of procedural due process. The key to a procedural due process claim is

26

whether the plaintiff was afforded the quantity of process to which he was constitutionally entitled prior to the deprivation of a protected interest. In *Zinermon v. Burch*, the Supreme Court described the right to procedural due process as follows:

> The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. . . . In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*. . . . The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.

494 U.S. 113, 125-126 (1990) (internal citations and footnote omitted); *see also Brewer v. Chauvin*, 938 F.2d 860, 864 (8th Cir. 1991) ("The complained-of constitutional violation is the denial of procedural due process, not the plaintiff's discharge from public employment."). Stated simply, a plaintiff's due process rights are not violated because his property is taken from him; his rights are violated because he was denied a certain amount of process before his property was taken. *See, e.g., Carey v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken and unjustified deprivation of life, liberty, or property."). Because the essence of a procedural due process claim is whether or not the plaintiff was afforded constitutionally adequate process, the majority's emphasis on who made the final decision to terminate Coggin is misplaced.

To determine whether the LISD caused the deprivation of Coggin's procedural due process right in this case, we must ask whether the LISD caused Coggin not to have a due process hearing. Based on the record in this case, I believe the answer to this question is no. Under § 21.253 and § 21.254 of the Texas Education Code, the sole authority to appoint a state certified hearing examiner

27

was vested in the Commissioner of the TEA. In this case, the Commissioner denied Coggin a hearing because, based on his interpretation of § 21.253's filing requirement, Coggin's request for a hearing was untimely. Assuming the Commissioner misinterpreted the filing deadline, it was this mistake that caused Coggin to be denied a hearing and thus deprived him of his right to procedural due process. In contrast, the LISD did nothing to prevent Coggin from obtaining a pre-termination hearing. The LISD properly provided Coggin with notice of its intent to terminate his employment and of the measures he needed to take in order to preserve his right to a hearing. *See* TEX. EDUC. CODE ANN. § 21.251(a)(1) (Vernon 1996). Once the Commissioner refused to appoint a hearing examiner, the LISD had no authority to order the Commissioner to change his mind or to appoint a certified hearing examiner on its own. *See* TEX. EDUC. CODE ANN. § 21.257. Because the actions of the LISD did not in any way cause the denial of Coggin's right to a hearing, the LISD cannot properly be said to have caused the deprivation of Coggin's right to procedural due process.

The majority attempts to overcome this causation argument by asserting that the LISD had other options available to afford Coggin due process even after the Commissioner refused to appoint a hearing examiner. *See* Maj. Op. at 21. For example, the majority suggests that the LISD could have held its own due process hearing. Alternatively, the majority contends that the LISD could have sent a second notice of termination in an effort to extend the period of time in which Coggin could file a timely request for a hearing. In essence, the majority argues that, because the LISD did not take steps to correct the mistake of the Commissioner, its inaction "caused" the violation of Coggin's right to procedural due process.

The majority's argument fails because it misstates the LISD's obligation to Coggin in this situation. Under the unique setting of this case, Texas law deliberately separates the decision to

28

terminate a public school teacher from the duty to afford a due process hearing, presumably as a means of protecting teachers from biased school board reviews.[61] Contrary to the majority's suggestion, the LISD had no authority to appoint a hearing examiner under this statutory scheme, nor did it have the authority to supplement Coggin's statutorily-governed hearing with its own factfinding hearing.[62] Under Texas law, the LISD's role in providing Coggin procedural due process was complete when it provided him with constitutionally adequate notice of the charges against him and informed him of the procedures he needed to follow to request a pre-termination hearing from the Commissioner of the TEA. Once the LISD fulfilled this obligation, under Texas's statutory scheme, the duty to ensure that Coggin was afforded the hearing to which he was constitutionally entitled

---

[61]The apparent purpose of this scheme is to ensure teachers a fair and independent review of the allegations against them when faced with termination prior to the expiration of their contracts. Under Texas law, Coggin could be terminated only for "good cause *as determined by the board*." *See* TEX. EDUC. CODE ANN. § 21.211(a)(1) (emphasis added). By providing for an independent pre-termination hearing, however, Texas law limits the circumstances in which a school board may find "good cause" for termination. Although the school board may reject the conclusions of law and proposed action recommended by the appointed hearing examiner in an employee's case, the school board may not reject the hearing examiner's findings of fact if they are supported by the substantial evidence in the record. *See* TEX. EDUC. CODE ANN. § 21.259.

[62]The majority suggests that "nothing in the state statute or caselaw" prohibited the LISD from holding its own hearing. Maj. Op. at 22. Yet, the Texas Supreme Court recently held that a school district may not avoid the rules set forth in the Texas Education Code for terminating an employee. *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 568 (Tex. 2000) (concluding that "the Board did not have authority within the statutory scheme of subchapter F" to make additional findings beyond those made by the appointed hearing examiner); *see also* TEX. EDUC. CODE ANN. § 21.251 ("[Subchapter F] applies if a teacher requests a hearing after receiving notice of the proposed decision to: . . . (2) terminate the teacher's probationary or term contract before the end of the contract period . . . ."). The majority dismisses *Davis* as "inapposite in the present case" because it presented no due process question. Maj. Op. at 24. *Davis*, however, is very relevant because it illustrates the mandatory nature of Texas's statutory scheme for providing process. If the LISD had held its own hearing, and made factual findings supporting its decision to terminate, Coggin would undoubtably rely on *Davis* to challenge those findings.

shifted to the Commissioner.[63]

Finally, the majority argues that if *state procedures* prevented the LISD from remedying the mistake of law made by the Commissioner, then those procedures should "yield to federal law under the Supremacy Clause." Maj. Op. at 22. This argument, however, assumes that the LISD retained an obligation to ensure that Coggin receive all the process he was due prior to terminating his employment. As noted above, Texas law vests that obligation in the Commissioner of the TEA—not the school district. The only way that Coggin could succeed against the LISD in this case then, is if we invalidate Subchapter F's hearing provisions. But Coggin does not challenge the constitutionality of Texas's statutory scheme, either on its face or as applied in his case. On the contrary, he concedes that the procedures set forth in Subchapter F of the Texas Education Code are precisely the kind of "reasonable procedural requirements" for invoking due process rights previously sanctioned by the Supreme Court. *See Logan v. Zinermon*, 455 U.S. 437 (1982) (stating that "[t]he State may erect reasonable procedural requirements for triggering [due process rights]," and that the State "certainly accords due process when it terminates a claim for failure to comply" with those requirements). Because Coggin argues only that the LISD violated his procedural due process right by terminating him after *the Commissioner* wrongfully denied him a hearing, his claim must fail for lack of causation.[64]

---

[63]To be sure, the majority is correct that the party who causes the deprivation of property is usually the party responsible for affording due process. Indeed, had this case arisen before the Texas legislature amended the Texas Education Code in 1995, there would be no question that the LISD could be held liable under § 1983 for terminating Coggin without a hearing. In 1995, however, the Texas legislature dramatically altered the state's provisions for terminating teachers under contract, and thereby changed this result.

[64]One reason why the majority may be so determined to find causation in this case is because Coggin is barred by the Eleventh Amendment from suing the Commissioner and the TEA for damages

30

In sum, because Coggin has failed to establish a causal connection between the deprivation of his right to procedural due process and the actions of the LISD, I believe his §1983 claim must fail. Thus, I would vacate the decision of the district court and render for the LISD.

---

caused by their violation of his procedural due process right. On this point, it is worth noting that Coggin was not entirely without remedy in this case. Specifically, he could have filed suit against the Commissioner and the TEA in state court for declaratory or injunctive relief at the time the Commissioner refused to appoint a hearing examiner. *See, e.g.,* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) ("A person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any questions of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder."); TEX. EDUC. CODE ANN. § 7.057(d) ("A person aggrieved by an action of the [TEA] or decision of the commissioner may appeal to a district court in Travis County.").