United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 12, 2003**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

———————————

No. 03-30299
Summary Calendar

———————————

WAYNE CLOUATRE,

Plaintiff-Appellant,

VERSUS

MARVIN RUNYON,
POSTMASTER GENERAL; ET AL.,

Defendants,

MARVIN RUNYON,
POSTMASTER GENERAL,

Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Eastern District of Louisiana
m 97-3540-C

———————————

Before Smith, Demoss, and Stewart,
    Circuit Judges.

Per Curiam:[*]

Wayne Clouatre appeals the dismissal of his claims under the Rehabilitation Act of 1973, 29 U.S.C. § 794.[1] For reasons largely articulated in the opinion of the magistrate judge sitting by agreement, we affirm.

Clouatre sued the Postmaster General, asserting that a pattern of harassment from his supervisors caused him to suffer substantially and to develop a mental disability.[2] Clouatre claimed that the Postal Service failed to accommodate this disability and improperly terminated his employment.

At the conclusion of the bench trial, the court entered judgment in favor of the Postmaster General and dismissed Clouatre's claim with prejudice, based on Clouatre's failure to produce evidence indicating what kind of accommodation the Postal Service should have afforded.[3] Even if one assumes that Clouatre effectively notified the employer of his mental disability,[4] an employee has an obligation to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The Rehabilitation Act states, in part, "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability[,] be subjected to discrimination under any program or activity receiving Federal financial assistance or . . . by the United States Postal Service." 29 U.S.C. § 794(a). The statute tracks the language of the Americans with Disabilities Act in determining whether a violation has occurred with regard to an employment decision. 29 U.S.C. § 794(d).

[2] Couatre displayed symptoms of depression following complications arising from the unique and substantial health problems of his daughter. After Richard Palisi became postmaster at Clouatre's station, Palisi asked his employees to take on additional workloads. Clouatre refused. Palisi and other supervisors cited Clouatre for numerous technical violations concerning the delivery of his mail; they rarely, if ever, cited other employees for similar violations. Clouatre complained of increased
(continued...)

[2](...continued)
stress, his behavior became erratic, and he requested assistance for his deliveries. He eventually sought psychiatric treatment.

[3] To establish a *prima facie* claim of intentional discrimination, a plaintiff must show "'(1) he or she suffers from a disability; (2) he or she is qualified for the job; (3) he or she was subject to an adverse employment action; and (4) he or she was replaced by a non-disabled person or was treated less favorably than non-disabled employees.'" *Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 (5th Cir. 1997) (quoting *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)). As part of proving he is a "qualified individual," a disabled plaintiff must illustrate that, "with or without reasonable accommodation, [he] can perform the essential functions of the employment position [he] holds or desires." 42 U.S.C. § 12111(8).

[4] The court, *arguendo*, assumed that a combination of Clouatre's increasingly odd behavior and his requests to management to "back off" sufficed to alert his supervisors that something warranted their attention. See *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313-14 (3d Cir. 1999). Such odd behavior included switching delivery routes on a frequent basis, requesting help for routine deliveries, and substantially underperforming on the
(continued...)

2

state how the employer may accommodate him.[5]

Clouatre produced no evidence showing that he gave an indication to management as to how it could accommodate him in a reasonable fashion. Although the Postal Service may not have performed the most effective examination of Clouatre, the court did not err in holding that the employer participated in the process of exploring Clouatre's condition.[6] Additionally, as the court noted, at the time of Clouatre's termination, his mental state deteriorated to such an extent[7] that the Postal Service could not have made *any* accommodation that would have allowed him to remain in his position. Consequently, the court did not err in finding that Clouatre did not produce ample evidence that he had notified the Postal Service of a needed accommodation.[8]

Thus, Clouatre failed to prove a claim under the Rehabilitation Act. Although the conduct of his supervisors is troubling,[9] Clouatre may not pursue his claim in this form.

AFFIRMED.

---

[4](...continued) amount of mail delivered in a shift. We do not express an opinion as to whether one may notify an employer of a disability merely through actions and informal statements rather than through a more formalized declaration.

[5] "Where the disability, resulting limitations, and necessary reasonable accommodations, are not . . . apparent to the employer, as is often the case when mental disabilities are involved, the initial burden rests primarily upon the employee, or his health-care provider, to specifically identify the disability . . . and to suggest the reasonable accommodations." *Taylor v. Principal Fin. Group*, 93 F.3d 155, 165 (5th Cir. 1996). Such a notification triggers a duty on the part of the employer "to participate in the interactive process of determining" an accommodation. *Id*.

[6] In certain instances, the employee's disability will be such that the employer "may have an extra duty to explore the employee's condition." *Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731, 736 n.5 (5th Cir. 1999). Here, the court determined that the Postal Service, by conducting a fitness-for-duty examination of Clouatre, sufficiently explored his condition to satisfy whatever duty it may have owed.

[7] Shortly after Clouatre's termination, a psychiatrist who treated him diagnosed a disabling medication condition that precluded "useful service" in the Postal Service. Eventually, in interviews with a psychiatrist, Clouatre made threatening statements against some of his former supervisors.

[8] We review the court's findings of fact for clear error and its legal conclusions *de novo*. *Coggin v. Longview Indep. Sch. Dist.*, 289 F.3d 326, 330 (5th Cir. 2002).

[9] The court stated that "[m]uch of the behavior directed toward [Clouatre] was unjust and inhumane . . . . This, however, does not bring plaintiff under the protection of the Rehabilitation Act." Because he is a federal employee, Clouatre may not sue under the Federal Tort Claims Act or similar state tort statutes. *See, e.g,. Bennett v. Barnett*, 210 F.3d 272, 277 (5th Cir. 2000) (holding that a postal employee's emotional distress claims brought against the Postal Service, under the Federal Tort Claims Act, were preempted by the Federal Employees' Compensation Act); *Rollins v. Marsh*, 937 F.2d 134, 138-40 (5th Cir. 1991) (holding that Civil Service Reform Act precluded suit under Federal Tort Claims Act).