# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 1, 2011

No. 09-20732

Lyle W. Cayce
Clerk

TOBIE B. ROSS, JR., President Board of Trustees; ALLEN PROVOST, Vice
President; T. MARIE MCCALL, Secretary; ALBERT L. LEMMONS,
Assistant Secretary; SILVIA BROOKS WILLIAMS; CHARLES H. TAYLOR;
BARBARA A. GATSON; BOARD OF TRUSTEES FOR NORTH FOREST
INDEPENDENT SCHOOL DISTRICT,

Plaintiffs - Appellants

v.

TEXAS EDUCATION AGENCY, STATE OF TEXAS,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-3049

Before KING, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

The Texas Education Agency (TEA) decided to temporarily suspend the
responsibilities of the Board of Trustees for the North Forest Independent School
District (Trustees) and replace the Trustees with a board of managers
(Managers), pursuant to § 39.102 of the Texas Education Code. The Trustees

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

filed a request for a temporary restraining order (TRO) and temporary injunction in a state district court. After the state law claims were dismissed, TEA replaced the Trustees with the Managers. The Trustees subsequently filed suit against the TEA and the State (collectively, the State) in federal court, seeking to vacate TEA's decision to appoint the Managers. They asserted claims for violations of 42 U.S.C. §§ 1973 and 1973c (the Voting Rights Act of 1965), as well as violations of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment (collectively, constitutional claims). The district court granted the State's motion for summary judgment. The Trustees appealed.

On appeal, the Trustees challenge only the district court's judgment regarding the Trustees' constitutional claims. For the following reasons, we AFFIRM the district court's judgment as the State and TEA are entitled to Eleventh Amendment sovereign immunity.

## I.

For several years, North Forest Independent School District (hereinafter the school district) has suffered from persistent academic and financial deficiencies, as well as problems complying with federal and state program requirements. Notably, TEA auditors have determined that, since 2001, the school district has misappropriated more than $12.5 million in construction bond proceeds to pay general operating expenses. During the 2005-2006 and 2006-2007 school years, the school district overreported its average daily attendance—a critical number used to calculate state funding—resulting in an overpayment of $4.5 million and $5.7 million, respectively, by the State. The Trustees' financial mismanagement caused the school district to experience an acute budget and cash-flow crisis, including operating fund deficits in excess of $5 million in 2007 and more than $7 million in 2008 and a cash-flow deficit in excess of $13 million in 2008. These deficiencies have resulted in a number of

No. 09-20732

interventions by the Texas Commissioner of Education (Commissioner) and TEA.

Initially, TEA intervened only to a minor degree by sending auditors in to investigate mismanagement, sending TEA representatives to attend board meetings, and conducting other on-site investigations. In 2007, TEA sent a conservator to the school district to assist it in regaining its financial stability. A few months later, TEA assigned another conservator to direct the actions of the school district in matters related to academic improvement and program compliance. During that time, TEA began an accreditation investigation of the school district, which resulted in TEA withholding the school district's accreditation until the investigation was complete. In May 2008, TEA sent the preliminary findings of its investigation to the school district. TEA determined that the "lack of proper internal controls to ensure the efficient and effective operation of the district . . . resulted in serious and persistent deficiencies in both the academic and financial performance of the district."

On July 31, 2008, TEA began the procedures for appointing a board of managers. As required by § 5 of the Voting Rights Act, the Commissioner sought preclearance from the United States Department of Justice (DOJ) to assign a board of managers to manage the school district's affairs. *See Texas v. United States*, 523 U.S. 296, 298–99 (1997) (explaining that "Texas is a covered jurisdiction under § 5 of the Voting Rights Act of 1965, and consequently, before it can implement changes affecting voting[, i.e. replacing school board members,] it must obtain preclearance from the United States District Court for the District of Columbia or from the Attorney General of the United States"). The same day, the Commissioner sent notice of his proposed order to the school district. The Commissioner received preclearance from DOJ on October 6, 2008.

In his letter, the Commissioner notified the Trustees of his decision to appoint the Managers, pursuant to § 39.131(a)(9) of the Texas Education Code

3

and title 19, § 97.103 of the Texas Administrative Code.  The Commissioner explained that he was requesting preclearance from the DOJ for the temporary suspension of the Trustees' powers and duties.  He also explained: "In accordance with 19 TAC §97.1037(a)(3), the district may request a record review related to the assignment of [the] board of managers."  Subsequently, the Trustees requested a record review.

The record review was initially set for September 9, 2008, but was continued by agreement of the parties to September 25, 2008.  For reasons disputed by the parties, the date of the record review was again rescheduled and set for October 2, 2008.  On that day, a representative appeared on behalf of the Trustees, but the parties dispute what happened at this meeting.  Also on October 2, 2008, the Trustees sought a TRO and injunction in state court to halt the record review.  *See N. Forest Indep. Sch. Dist. v. Tex. Educ. Agency*, No. D-1-GN-08-003589 (53rd District Court, Travis County, Tex. Oct. 2, 2008).  However, the trial court dismissed the Trustees' requests.

Thereafter, the Trustees filed suit against the State in federal court, seeking to vacate TEA's decision to appoint the Managers. They asserted claims for violations of the Voting Rights Act of 1965, as well as violations of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment.  The State filed a motion to dismiss, which the district court treated as a motion for summary judgment.   The district court granted the motion and held that the State had not violated the Voting Rights Act because it properly sought preclearance from the DOJ and the Trustees failed to show by a preponderance of the evidence that the State's actions constituted voter dilution.  The district court also held that the Trustees' constitutional claims, pursuant to 42 U.S.C. § 1983, were barred by sovereign immunity under the Eleventh Amendment. The Trustees appealed.  We AFFIRM the district court's judgment as the State and TEA are entitled to Eleventh Amendment sovereign immunity.

No. 09-20732

## II.

We review Eleventh Amendment sovereign immunity determinations, as we do other questions of subject matter jurisdiction, as a question of law *de novo*. *United States v. Tex. Tech. Univ.*, 171 F.3d 279, 288 (5th Cir. 1999).

## III.

The Eleventh Amendment provides that federal courts cannot exercise jurisdiction over "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. This provision works as a jurisdictional bar to suits brought against state governments and their agencies in federal courts. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). This applies to a party's § 1983 claims against a state or its agents. *Quern v. Jordan*, 440 U.S. 332, 341(1979) (explaining that § 1983 does not "override the traditional sovereign immunity of the States"). For a party to properly bring a suit against a state or its agency, either a state must waive its sovereign immunity, or Congress must, pursuant to § 5 of the Fourteenth Amendment, intentionally abrogate the state's immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

The district court correctly held that the Trustees' constitutional claims pursuant to § 1983 are barred by sovereign immunity.[1] Section 1983 explains that "[e]very *person* who . . . subjects, or causes to be subjected, any citizen of the

---

[1] Although the Trustees did not raise § 1983 claims in their filings to the district court, the district court properly characterized the Trustees' constitutional claims as § 1983 claims because that is the vehicle for enjoining the implementation of an allegedly unconstitutional statute. *See Pietzsch v. Mattox*, 719 F.2d 129, 132 (5th Cir. 1983) ("[P]laintiffs have sought declaratory and injunctive relief under 42 U.S.C. § 1983 with regard to the facial unconstitutionality of these statutes."); *see also Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) ("Plaintiffs brought this action under 42 U.S.C. § 1983, alleging that the statute and rules violate the First, Fifth, and Fourteenth Amendments, and requesting declaratory and injunctive relief.").

No. 09-20732

United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." *Id*. (emphasis added).  In cases where a party seeks to enjoin the state pursuant to § 1983, the Supreme Court explained that sovereign immunity bars a party from doing so because neither the state nor its agency is a "person" for purposes of § 1983.  *Quern*, 440 U.S. at 341. The Trustees do not claim that the State has waived its sovereign immunity.[2]  Thus, because the Trustees seek to enjoin the State's actions pursuant to § 1983, their claims are barred by the Eleventh Amendment.  *See Quern*, 440 U.S. at 341.  This also applies to TEA as it is a state agency.  *See P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 144; *see also Coggin v. Longview Indep. Sch. Dist.*  289 F.3d 326, 330 n.9 (2002) (recognizing that TEA is an agency of the state), *vacated on other grounds by* 337 F.3d 459 (5th Cir. 2003).

## IV.

Accordingly, we AFFIRM the district court's judgment as the State and TEA are entitled to Eleventh Amendment sovereign immunity.

---

[2] The Trustees do not address the district court's sovereign immunity holding in their brief to this court.  Moreover, because the Trustees did not file a reply brief, they have not countered the State's sovereign immunity arguments, which are raised in the State's response.  At oral argument, the court asked the Trustees' counsel to respond to the sovereign immunity argument.  Counsel requested the opportunity to file supplemental briefing, which the court agreed to permit.  However, no supplemental briefing was filed.