**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 99-60166

_____

MELANIE BENNETT; LYNN HARRELL,

Plaintiffs-Appellants-Cross-Appellees,

VERSUS

RICHARD BARNETT; KEVIN FORD; GUY ROBINSON; BARBARA A. HARRIS,
Executrix of the Estate of Jack L. Harris,

Defendants-Appellees,

UNITED STATES OF AMERICA,

Defendant-Appellee-Cross-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Mississippi
_____
April 12, 2000


Before HIGGINBOTHAM and PARKER, Circuit Judges; and WARD, District
Judge.[1]

ROBERT M. PARKER, Circuit Judge:

This case arises out of an internal investigation by the
United States Postal Service of an altercation between two postal
workers.  Plaintiff-Appellants sought damages for constitutional
violations against individual federal employees pursuant to

---

[1] District Judge of the Eastern District of Texas, sitting
by designation.

-1-

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and against the United States under the Federal Tort Claims Act ("FTCA"). The district court dismissed the *Bivens* claims as pre-empted by the plaintiffs' collective bargaining agreements and held a trial on the FTCA claims of plaintiff Melanie Bennett while dismissing all other FTCA claims. Bennett was awarded $2,500 on one of her FTCA claims. The plaintiffs appeal and the United States cross-appeals.

**FACTUAL HISTORY AND PROCEEDINGS BELOW**

Plaintiff Lynn Harrell and another postal employee got into an argument wherein the latter told Harrell that they could settle the situation "any place and anytime." Richard Barnett, a customer services supervisor, heard about the altercation and put both employees on administrative leave. Postal inspector Kevin Ford began investigating the situation and arranged an initial interview with Harrell. The events that occurred during this interview led to the filing of this lawsuit.

Harrell's union steward, Melanie Bennett, was permitted to attend the interview. The questioning turned toward whether Harrell owned a gun. Harrell admitted that he owned a gun and that he had, in fact, brought it to work with him the day of the interview. Ford summoned another inspector to assist in the interview and then sought to obtain Harrell's consent to a search for the gun in his car. At this point, Bennett interrupted and attempted to persuade Harrell to leave the room. The interviewers (now including Bennett's supervisor, Jack Harris)

-2-

asked Bennett to be quiet and even to leave the room.  Bennett

refused both requests.  Harrell admits that he was not

mistreated.  After repeatedly refusing to leave the interview,

Bennet was forcibly removed from the room by another postal

inspector, Guy Robinson.[2]

Harrell eventually signed the consent form and the gun was

subsequently taken from his car.  After a full investigation,

Harrell was reinstated to his previous position and his gun was

returned to him.  Bennett was suspended for her actions during

the interview.  Bennett claims that she was suspended on pre-

textual grounds, needlessly investigated for "bogus charges" and

subsequently harassed in other ways.

This action was filed on October 11, 1997.  Bennett claims

that her First Amendment rights were violated.  Harrell claims

that his Fourth, Fifth and Sixth Amendment rights were violated.

On July 27, 1998, both Bennett and Harrell added the United

States as a defendant and asserted claims under the FTCA,

including intentional infliction of emotional distress, assault,

battery and false imprisonment.

### STANDARD OF REVIEW

The district court's determination that the remedies

provided by the plaintiffs' collective bargaining agreements pre-

empt their *Bivens* claims is a question of law.  The district

---

[2]  Bennett filed criminal charges against Robinson for
physically removing her from the building.  The municipal court
in Hattiesburg, Mississippi directed a verdict of not guilty at
the close of the city's case.

court's determination whether plaintiffs' claims presented a "substantial question" of coverage under the FECA is also a question of law. "This court reviews *de novo* a district court's conclusions on questions of law." *Hart v. Bayer Corp.*, 199 F.3d 239, 243 (5th Cir. 2000).

**DISCUSSION**

## I.   Constitutional (*Bivens*) Claims.

The district court's analysis of the plaintiffs' *Bivens* claims centers on the question of whether such claims are viable in the government-employee and government-employer relationship. In *Bush v. Lucas*, 647 F.2d 573 (5th Cir. Unit B 1981), *aff'd*, 462 U.S. 367 (1983), this circuit held that *Bivens* did not apply in the context of the federal employee-employer relationship. The "relationship" was a "special factor" that counseled hesitation against the judicial creation of a damage remedy for the deprivation of a federal employee's constitutional rights. *See Bush*, 647 F.2d at 389. After assuming that the petitioner's constitutional claims had merit and that the civil service remedies were less compensatory than an individual damage remedy,[3] the Supreme Court affirmed this circuit's opinion and noted the following:

> [W]e do not decide whether or not it would be good policy to permit a federal employee to recover damages

---

[3]   "We assume for purposes of decision that petitioner's First Amendment rights were violated by the adverse personnel action. We also assume that, as petitioner asserts, civil service remedies were not as effective as an individual damages remedy and did not fully compensate him for the harm he suffered." *Bush*, 462 U.S. at 367.

> from a supervisor who has improperly disciplined him for exercising his First Amendment rights. As we did in Standard Oil, we decline "to create a new substantive legal liability without legislative aid and as at the common law," because we are convinced that Congress is in a better position to decide whether or not the public interest would be better served by creating it.

*Bush*, 462 U.S. at 390 (citation omitted). In other words, the *Bush* Court left it up to Congress to provide the appropriate remedy.

Chapters 10 and 12 of the Postal Reorganization Act ("PRA") set out a comprehensive scheme governing employment relations within the Postal Service. *See* 39 U.S.C. §§ 1001-11, 1201-09 (1994). Although the Civil Service Reform Act ("CSRA") generally excluded postal employees from its coverage, *see* 5 U.S.C. § 2105(e) (1994), the PRA provided for CSRA coverage for some postal employees, called "preference eligible" postal employees, who are entitled to avail themselves of the CSRA's procedures for administrative and judicial review of adverse personnel actions. *See* 39 U.S.C. § 1005(a)(4) (1994).[4] For other postal employees, such as the plaintiffs, the Postal Service shall establish procedures guaranteeing them "an opportunity for a fair hearing on adverse actions, with representatives of their own choosing."

---

[4] *See Kroll v. United States*, 58 F.3d 1087, 1091 (6th Cir. 1995) ("Indeed, we find that the extent to which the PRA removed the USPS and its employees from the general provisions related to government organizations and employees as expressed in Title 5 clearly illustrates the intent to make the PRA as codified in Title 39, a comprehensive scheme governing the USPS and its employees.").

-5-

39 U.S.C. § 1001(b) (1994).[5]

Under the PRA, postal employees have collective bargaining rights. The PRA also provides that employee-management relations are generally subject to the provisions of the Labor Relations Management Act (LRMA) and the National Labor Relations Act ("NLRA"). *See* 39 U.S.C. § 1209(a)-(b) (1994). The collective bargaining agreements may include "any procedures for resolution by the parties of grievances and adverse actions arising under the agreement, including procedures culminating in binding third-party arbitration." 39 U.S.C. § 1206(b) (1994). The collective bargaining agreement in effect during the actions described herein contained such provisions.

In *Pipkin v. United States Postal Serv.*, 951 F.2d 272 (10th Cir. 1991), the court dismissed a postal employee's *Bivens* claims, citing its deference to Congress's judgment in creating the collective bargaining agreement system for postal employment disputes.

> Congress explicitly authorized the USPS to adopt comprehensive binding arbitration provisions in its collective bargaining agreements between the USPS and its employees. The applicable collective bargaining agreement provided grievance procedures, including arbitration, to address plaintiffs' disputes arising from the employment relationship. Because Congress has provided a comprehensive procedure to address postal employees' constitutional claims arising from their

---

[5] A number of courts have recognized that Postal Service grievance procedures are constitutionally sufficient, and preclude constitutional causes of action against postal officials. *See, e.g., Bradley v. United States Postal Serv.*, 832 F.2d 1061, 1062 (8th Cir. 1987); *McCollum v. Bolger*, 794 F.2d 602, 607 (11th Cir. 1986); *Ellis v. United States Postal Serv.*, 784 F.2d 835, 840 (7th Cir. 1986).

> employment relationship with the USPS, those
> arbitration procedures preclude plaintiffs' *Bivens*
> claims.

*Pipkin*, 951 F.2d at 275 (citation omitted). *See also Eure v. United States Postal Serv.*, 711 F. Supp. 1365, 1371 (S.D. Miss. 1989) ("[B]ecause plaintiffs in their positions as federal employees of the Postal Service had access to the Congressionally approved grievance procedure of the collective bargaining agreement, then it follows that plaintiffs may not maintain their federal constitutional claims against the certain named individual Postal Service officials.").

Plaintiffs argue that the procedures contained in their CBA do not constitute "alternative procedures" which provide meaningful remedies against the Postal Service or the United States. The district court rejected this argument. In *Pipkin* the court also rejected this argument and emphasized the comprehensive nature of the statutory scheme to address the claims of postal employees.

> When Congress has acted to create a comprehensive
> statutory scheme to address a particular class of
> claims, the courts will not act to create additional
> judicial remedies, *even where a particular litigant
> does not have a remedy available under the statutory
> scheme*. This is particularly true in federal
> employment relationships, where Congress has provided a
> comprehensive civil service scheme to address disputes.

951 F.2d at 275 (citations omitted) (emphasis added). *See also Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988) ("When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we

-7-

have not created additional *Bivens* remedies."); *Pereira v. United States Postal Serv.*, 964 F.2d 873, 875 (9th Cir. 1992) ("Pereira's [constitutional] claim lacks merit because the collective bargaining agreement itself, and the concomitant ban on judicial review . . . are themselves generated by statute; they are part of Congress'[s] overall remedial scheme.").

We agree with the district court and hold that the PRA (via the plaintiffs' collective bargaining agreements) pre-empts *Bivens* claims like those asserted in this case. The district court's decision on this issue is affirmed.

## II. FTCA Claims.

### A. FECA Coverage.

The district court next turned to the provisions of the Federal Employees' Compensation Act (FECA) to analyze plaintiffs' FTCA claims. The FECA provides compensation for personal injuries that federal employees "sustain[] while in the performance of his duty." 5 U.S.C. § 8102(a) (1994).

The FECA functions as a federal workers' compensation act and provides a substitute for, not supplement to, recovery. "In enacting [FECA], Congress adopted the principal compromise--the 'quid pro quo'--commonly associated with workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983). The district court held that this remedy is

exclusive of any other remedy including the FTCA. *See also Avasthi v. United States*, 608 F.2d 1059, 1060 (5th Cir. 1979). The district court considered the issue of whether a substantial question existed as to "whether plaintiffs' claims of emotional distress are within the coverage of the FECA."

Federal courts are divided on this question. The Fifth Circuit has yet to answer it, but we have held that where a "substantial question" exists as to FECA coverage, a tort action is barred unless the Secretary of Labor determines that the FECA does not apply. *See Avasthi*, 608 F.2d at 1060. The district court found that a "substantial question" existed as to FECA coverage and held that the plaintiffs could not maintain their FTCA actions unless and until the Secretary of Labor determined that their claims were *not* covered by the FECA.

Because Harrell did not submit his FTCA claims to the Secretary of Labor and since a "substantial question" existed with regard to coverage of his claims under the FECA, they were pre-empted. The court dismissed Harrell's FTCA claims without prejudice. We affirm this ruling.

The district court held that Bennett could pursue her FTCA claims because she submitted them to the Secretary of Labor. The United States cross-appeals this ruling which allowed Bennett's claims to go to trial.[6] It argues that the district court should

---

[6] The district court held a bench trial on Bennett's two claims for emotional distress. The court found for the United States on the first claim and for Bennett on the second claim. Bennett appeals the district court's ruling on her first claim. *See* discussion *infra*.

have held that *all* of the FTCA claims were precluded by the FECA.

Bennett's second FTCA claim was for emotional distress based on alleged on-the-job harassment.  As noted above,  employees may not bring FTCA claims that arise out of federal employment relationships until they submit the claim to the Secretary of Labor for a determination of FECA coverage.  While Bennett submitted her claim, it was not denied because of lack of coverage under the FECA, but for lack of proof.  By ruling on the sufficiency of the evidence, the Secretary thought coverage existed.[7]  Thus, the district court did not have jurisdiction to try the claim.  *See White v. United States*, 143 F.3d 232, 234 (5th Cir. 1998) ("FECA vests with the Secretary of Labor the power to 'administer, and decide all questions arising under FECA,' 5 U.S.C. § 8145, and the Secretary's action in allowing or denying an award under FECA is final and conclusive and not subject to review by a court of law, 5 U.S.C. § 8128(b).").  The award of damages to Bennett is reversed.[8]

---

[7]  Plaintiffs disagree with this assertion in that even if the claims did occur during the performance of their work duties, there is not a "substantial question" that they are covered by the FECA.  Plaintiffs argue that their claims are "dignity torts" that did not result in physical injury.  They argue that FECA covers "injury by accident," *see* 5 U.S.C. § 8101(5) (1994), and that the FECA anticipates that employees will suffer a disability causing the employee to perform restricted duty.  If no medical or disability benefits, then there is not disability claim.  We reject this argument.  Had the Secretary of Labor agreed with this, the Secretary would have dismissed the claim for lack of coverage; however, the dismissal was based on lack of proof.

[8]  Because we find that a "substantial question" exists as to FECA coverage of plaintiffs' tort claims, it is unnecessary for us to examine the district court's determination that these claims are not pre-empted by the CSRA and the PRA.

## B. Bennett's First Emotional Distress Claim.

Bennett's first FTCA claim was also for emotional distress and was based on facts surrounding the interview. The district court dismissed this claim at the conclusion of the bench trial because Bennett exceeded her authority as a union steward. Bennett charges that this ruling was erroneous. We disagree.

The district court's *legal* determination of the limits of Bennett's authority as a steward is correct. She advised Harrell that he had the right to an attorney and that he did not have to answer any questions. At that point Bennett only had the right to remain in the interview as long as she did not interfere with the legitimate employer objective of conducting an orderly investigatory interview of Harrell's involvement in the altercation and his possession of a gun on postal property. *See National Labor relations Bd. v. J. Weingarten, Inc.*, 420 U.S. 251, 258 (1975); *Southwestern Bell Telephone Co.*, 667 F.2d 470, 473-74 (5th Cir. 1982). The district court found Bennett exceeded her authority as union steward by interfering with the interview. The district court's *factual* determination that Bennett interfered with the interview is not clearly erroneous. *See Gebreyesus v. F.C. Schaffer & Assoc's, Inc.*, --- F.3d ---,---, No. 98-30974, 2000 WL 194518, at *2 (5th Cir. Mar. 6, 2000) ("The standard of review for bench trials is well-established: 'findings of fact are reviewed for clear error; legal issues de novo.'") (quoting *F.D.I.C. v. McFarland*, 33 F.3d 532, 536 (5th Cir. 1994)). Therefore, the district court's dismissal of

-11-

Bennett's first FTCA claims for emotional distress claim is affirmed.

## CONCLUSION

The district court's ruling that plaintiffs' *Bivens* claims are preempted by the CBA as per *Bush* is AFFIRMED. The district court's dismissal of Harrell's claims because he did not submit them to the Secretary of Labor is AFFIRMED. The district court's ruling that Bennett could pursue her FTCA claim for emotional distress because she submitted the claim to the Secretary of Labor and said claim was denied by the Secretary of Labor is REVERSED. The district court's dismissal of Bennett's first FTCA claim for emotional distress because she exceeded her authority as union steward is AFFIRMED.

AFFIRMED in part, REVERSED in part.