06-4384-cv
Mathirampuzha v. Potter

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: March 17, 2008            Decided: November 3, 2008)

Docket No. 06-4384-cv

------------------------------------

Joseph MATHIRAMPUZHA,

Plaintiff-Appellant,

- v -

John POTTER, Postmaster General,
United States of America,

Defendants-Appellees,

Ron Sacco,

Defendant.*

------------------------------------

Before:   WINTER, STRAUB, and SACK, Circuit Judges.

Appeal from a judgment of the United States District Court for the District of Connecticut (Janet Bond Arterton, Judge).  The district court granted summary judgment for defendants on plaintiff's Title VII claims and dismissed his claims under the Federal Tort Claims Act for lack of subject-matter jurisdiction.  We agree with the district court's resolution of plaintiff's Title VII claims: his hostile work environment and retaliation claims were not exhausted, and on his

---

* The Clerk of Court is directed to amend the official caption as set forth above.

remaining claims he failed to submit evidence on which an inference of discrimination could reasonably be based. We also agree with the district court that the Federal Employees' Compensation Act vests the Secretary of Labor with exclusive authority over federal employees' claims arising from work-related injuries. But we disagree with the district court's dismissal of the plaintiff's emotional-distress claim under the Federal Tort Claims Act for lack of jurisdiction. We conclude that it should have stayed proceedings pending a final determination by the Secretary of Labor regarding Federal Employees' Compensation Act coverage.

Affirmed in part, vacated in part, and remanded.

W. MARTYN PHILPOT, JR., New Haven, CT, for Appellant.

LISA E. PERKINS, Assistant United States Attorney for the District of Connecticut (Kevin J. O'Connor, United States Attorney, Sandra S. Glover, Assistant United States Attorney, of counsel), Hartford, CT, for Appellees.

SACK, Circuit Judge:

Plaintiff Joseph Mathirampuzha appeals from a final judgment of the United States District Court for the District of Connecticut (Janet Bond Arterton, Judge). This appeal arises principally from an alleged physical assault at a postal facility on September 29, 2003, by Ron Sacco, a supervisor, against the plaintiff, a postal employee. The plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Federal Tort Claims Act ("the

2

FTCA"), 28 U.S.C. § 2671 et seq. The district court granted summary judgment in favor of the defendant on the Title VII claims and dismissed the FTCA claims for lack of subject-matter jurisdiction. Mathirampuzha v. U.S. Postal Serv., No. 3:04cv841, 2006 WL 2458669, 2006 U.S. Dist. LEXIS 62738 (D. Conn. Aug. 21, 2006).

With regard to the plaintiff's Title VII claims, the district court properly granted summary judgment. The plaintiff failed to exhaust his hostile work environment and retaliation claims, and the physical assault and denial of transfer requests he alleges were, respectively, not an adverse employment action and not ascribable to discriminatory motive or intent. That portion of the judgment of the district court is affirmed.

With regard to the plaintiff's FTCA claims, the Federal Employees' Compensation Act (the "FECA"), 5 U.S.C. § 8101 et seq., vests the Secretary of Labor with exclusive authority over federal employees' claims arising from work-related injuries. Unless it is clear that the FECA does not apply, federal courts may not entertain FTCA claims. Dismissal of such claims for lack of jurisdiction, however, is not always the proper disposition. In this case, because there was a substantial question regarding whether the plaintiff's emotional-distress claim is covered under the FECA and the Secretary of Labor had not yet rendered a decision regarding his FECA coverage, the district court should not have dismissed that FTCA claim for lack of jurisdiction. We therefore vacate that portion of the district court's judgment.

3

On remand, the district court should reinstate the FTCA claim and stay proceedings pending a final determination by the Secretary of Labor regarding FECA coverage.

**BACKGROUND**

"In setting forth the facts underlying this appeal from the district court's grant of summary judgment to the defendants, we construe the evidence in the light most favorable to the plaintiff, drawing all reasonable inferences and resolving all ambiguities in his favor." Colavito v. N.Y. Organ Donor Network, Inc., 438 F.3d 214, 217 (2d Cir. 2006).

The plaintiff, of Indian national origin, is a lawful permanent resident of the United States. Since 1997, he has been employed by the United States Postal Service as a mail handler at the processing and distribution center in Wallingford, Connecticut.

Soon after the plaintiff began working for the Postal Service, he requested a transfer to the processing and distribution center in Hartford, Connecticut, which is closer to where he and his family live. That request was denied. The plaintiff made several more requests, all of which were ignored or denied.

On September 29, 2003, the plaintiff was physically assaulted by Ron Sacco, a supervisor at the Wallingford plant. (Sacco was not the plaintiff's direct supervisor when the incident occurred.) Sacco grabbed the plaintiff's arm, punched him in the shoulder and the chest, spit in his face, and poked

4

him in the eye.  Sacco also shouted, "Joe, I['ll] never let you go to [the] Hartford plant."

The plaintiff's direct supervisor, Claudio Scirocco, quickly intervened -- or, as the plaintiff phrased it, "came to save my life."  A union representative promptly arrived on the scene and brought the plaintiff to the office of a higher-ranking Postal Service supervisor.  But the supervisor laughed when the plaintiff told her what had happened.  The plaintiff's union continued to advocate on his behalf, however, and Sacco was ultimately issued a "Letter of Warning" for "Conduct Unbecoming a Postal Supervisor" and was transferred to another work assignment for at least a year.

The plaintiff asserts that his confrontation with Sacco caused him physical injury and severe emotional distress.  He suffered chest pains and contusions to his shoulder blade, required eye surgery, and fell into a depression.

The plaintiff promptly pursued "pre-complaint counseling" pursuant to 29 C.F.R. § 1614.105 for "[a]ggrieved persons who believe they have been discriminated against."  He then filed an administrative "EEO Complaint of Discrimination in the Postal Service" on November 2, 2003.  The EEO complaint alleged a single act of discrimination: the incident involving Sacco on September 29, 2003.

The plaintiff subsequently filed suit in federal court in Connecticut.  In addition to the physical assault by Sacco, the plaintiff's amended complaint alleges that Sacco has

"verbally harassed" him since 1999, has "subjected him to disparate treatment by denying him approved lunch breaks and assistance in performing work duties," and has retaliated against him for complaining about his treatment. Am. Compl. ¶ 12. By failing to stop such conduct, the plaintiff charges, the Postmaster is liable under Title VII for subjecting him to a hostile work environment.[1] The plaintiff also asserts claims under the FTCA, alleging the same facts and demanding relief as a result of Sacco's assault, a hostile work environment, and the Postal Service's negligent supervision of its employees.[2]

On August 21, 2006, the district court granted the defendants' motion for summary judgment on the plaintiff's Title VII claims and their motion to dismiss his FTCA claims for lack of subject-matter jurisdiction.

The plaintiff appeals.

---

[1] The plaintiff also asserted a claim under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60. The district court dismissed the state-law claim as preempted by Title VII, Mathirampuzha v. Potter, 371 F. Supp. 2d 159, 161-63 (D. Conn. 2005), a decision the plaintiff does not challenge on appeal.

[2] The plaintiff's FTCA claims were filed as a separate action and consolidated with his Title VII claims by order of the district court.

6

**DISCUSSION**

I. Standards of Review

"We review a district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in [that party's] favor." Allianz Ins. Co. v. Lerner, 416 F.3d 109, 113 (2d Cir. 2005). "We will affirm the judgment only if there is no genuine issue as to any material fact, and if the moving party is entitled to a judgment as a matter of law." Id. (citing Fed. R. Civ. P. 56(c)).

Where, as here, the district court's determination whether it had subject-matter jurisdiction is based on an interpretation of federal law, our review of her determination is de novo. See Gambale v. Deutsche Bank AG, 377 F.3d 133, 139 (2d Cir. 2004).

II. Plaintiff's Title VII Claims

Title VII prohibits employment-related discrimination on the basis of race, color, religion, sex, or national origin and retaliation against employees who complain about discrimination. In 1972, Congress extended Title VII's protection to employees of the federal government, including postal workers.[3] 42 U.S.C. § 2000e-16(a); see also Loeffler v.

---

[3] We note that we have previously assumed without analysis that Congress extended Title VII's prohibition on retaliation to the federal sector. See Terry v. Ashcroft, 336 F.3d 128, 140-41 (2d Cir. 2003); Fitzgerald v. Henderson, 251 F.3d 345, 358 (2d Cir. 2001), cert. denied, 536 U.S. 922 (2002). The Supreme Court
(continued...)

7

Frank, 486 U.S. 549, 558-59 (1988); Simonton v. Runyon, 232 F.3d 33, 35 (2d Cir. 2000). Here, the plaintiff seeks relief under Title VII for being subjected to a hostile work environment on the basis of his race, color, and national origin. His amended complaint may be fairly read also to seek relief under Title VII based upon the encounter with Sacco on September 29, 2003, and Sacco's retaliatory motive for his conduct on that day. The district court determined that the plaintiff's hostile work environment and retaliation claims are barred because he failed to comply with Title VII's administrative exhaustion requirements, and the remainder of his Title VII claim is meritless because he failed to establish an adverse employment action. We agree with that result, although our reasoning differs somewhat from that of the district court.

A.   Exhaustion

"Prior to bringing suit under . . . Title VII . . . , a federal government employee must timely exhaust the administrative remedies at his disposal." Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir. 2001) (per curiam) (citation and internal quotation marks omitted).

---

[3](...continued)
recently clarified that the federal-sector provision of the Age Discrimination in Employment Act, 29 U.S.C. § 633a(a), prohibits retaliation based on the filing of an age discrimination complaint, but the Court did not address the issue of whether Title VII bans retaliation in federal employment. See Gomez-Perez v. Potter, 128 S. Ct. 1931, 1941 n.4 (2008). Because we ultimately conclude that the plaintiff's retaliation claim fails for lack of exhaustion, we simply highlight this question and leave its resolution for a more appropriate case.

> Regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") establish the applicable administrative procedures that a federal employee must exhaust prior to filing suit. The EEOC regulations require that the aggrieved employee, inter alia, (1) consult with a counselor at the relevant agency's Equal Employment Office ("EEO") within 45 days of the alleged discriminatory act, and, if the matter is not resolved after a mandatory counseling period, (2) file a formal written administrative complaint ("EEO complaint") within 15 days of receipt of the EEO counselor's notice of final interview and right to file a formal complaint ("EEO notice"). The employee may then file a civil action (i) within 90 days of notice of a final agency decision on his or her EEO complaint, or (ii) after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision.

Id. (citing 42 U.S.C. § 2000e-16(c) and 29 C.F.R. §§ 1614.105(a)(1), 1614.106(a) & (b), and 1614.408(a) & (b)).[4] "This court has treated the requirement that a federal employee bring a complaint to his or her EEO for resolution, see 29 C.F.R. § 1614.105, as analogous to the requirement that a private sector employee first bring a complaint to the attention of the [EEOC] for resolution." Terry v. Ashcroft, 336 F.3d 128, 150 (2d Cir. 2003) (citing Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001), cert. denied, 536 U.S. 922 (2002)). Although the general rule is that a Title VII plaintiff may not pursue an unexhausted claim, we will consider all claims to the extent they

---

[4] The Belgrave court cited 29 C.F.R. § 1614.408, but in 1999 this provision was redesignated as section 1614.407. See Federal Sector Equal Employment Opportunity, 64 Fed. Reg. 37,644, 37,659 (July 12, 1999).

are "reasonably related" to those that the plaintiff did assert in a timely EEO charge. Fitzgerald, 251 F.3d at 359.

After seeking pre-complaint counseling under 29 C.F.R. § 1614.105, the plaintiff timely filed a formal written administrative "EEO Complaint of Discrimination in the Postal Service" on November 2, 2003. The administrative complaint form requires the employee to specify the "Type of Discrimination You Are Alleging" and provides the following checkbox options: race, color, religion, national origin, sex, age, retaliation, and disability. The plaintiff checked race, color, and national origin. The complaint form also requires the employee to specify the "Date on which alleged act(s) of Discrimination Took Place," to which the plaintiff answered "9/29/03." Then, in response to the requirement that he "Explain the specific action(s) or situation(s) that resulted in you alleging that you believe you were discriminated against," the plaintiff provided the following narrative:

> On Sept 29th my non scheduled day tour
> beginning from 3.30 to midnight. I was
> working F S M 100, as told by my M D O,
> Curtis Parente. At 11.30 pm my supervisor,
> Cladio [sic] Scirocco told me to get the
> reject mail 120 from the machine 22. I got
> an empty postcon from the F S M 1000 and was
> heading to get the mail. On the aisle I saw
> Mr. Ron Saco [sic] standing near by the Clock
> E 12, he yelled at me from there "Joe where
> you going". I responded that I was going to
> pick up the reject mail 120. He then shouted
> "go to 117 otherwise punch out and go home".
> Soon he rushed to me like a football player,
> hit my chest and shoulder with his full body
> power. I fell onto the yellow rails, I tried
> to hold on to the rails not to fall down. He

10

squeezed me with one hand while holding me tightly with his other arm. He continued this for almost three to five minutes, stating that he will never let me go to Hartford. His spit came on to my face (because he was too close to my face). His hand poked my left eye and tears were rolling down from my eyes, meanwhile my supervisor heard the yelling and came to the site, he then called the M D O, Curtis Parente[.] M D O Curtis Parente came to the spot with Don Kulak. Then the M D O assured me that he will take care of the matter and he asked me to continue to work. Then I filed a grievance with the union office.
I had two witnesses
1) Claudio Scerocco [sic] 204b
2) Sherri Sharrington Clerk

Joseph Mathirampuzha, EEO Complaint of Discrimination in the Postal Service 2, Nov. 2, 2003.

The administrative complaint, in other words, alleged a single act of discrimination: Sacco's aggressive behavior toward the plaintiff on September 29, 2003. Nowhere did the plaintiff assert or imply a retaliatory motive for Sacco's conduct, nor did he indicate that he had been verbally harassed in the past, denied lunch breaks and assistance in performing his work duties, or otherwise subjected to a hostile work environment.[5]

Nevertheless, the plaintiff argues on appeal that his retaliation and hostile work environment claims meet Title VII's exhaustion requirements because they are "reasonably related" to the allegations in his administrative complaint. We disagree.

---

[5] The documentation the plaintiff submitted during the pre-complaint counseling process was likewise devoid of any indication that he was alleging retaliation or a hostile work environment.

The exhaustion requirement is relaxed under the "reasonably related" doctrine if, inter alia, "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Terry, 336 F.3d at 151 (citation and internal quotation marks omitted); see also Deravin v. Kerik, 335 F.3d 195, 200-01 (2d Cir. 2003); Fitzgerald, 251 F.3d at 359-60. But we do not think that this recognized principle of "loose pleading," Deravin, 335 F.3d at 201 (citation and internal quotation marks omitted), can be stretched to bridge the gap between the allegations asserted in the plaintiff's EEO complaint and the claims he raises in this civil action. We have held that an EEOC investigation following "[a] complaint of retaliation could reasonably be expected to inquire into other instances of alleged retaliation by the same actor." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 178 (2d Cir. 2005) (citation, internal quotation marks, and brackets omitted). But in this case, the plaintiff's EEO complaint did not mention Sacco's previous behavior or his own previous complaints. A claim of unlawful retaliation was neither stated nor implied. We do not think that the plaintiff's allegation of a single incident of aggression by Sacco could reasonably be expected to blossom into an investigation covering allegations of unrelated misconduct by Sacco dating back several years.

We reach this conclusion bearing in mind that the "reasonably related" inquiry requires a fact-intensive analysis. "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the [EEO] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Deravin, 335 F.3d at 201 (citation and internal quotation marks omitted). "[I]t is the substance of the charge and not its label that controls." Id. (quoting Alonzo v. Chase Manhattan Bank, N.A., 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998)). "The central question is whether the complaint filed with the [EEO] gave th[e] agency adequate notice to investigate discrimination on both bases." Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (per curiam) (citations and internal quotation marks omitted).[6]

We frequently invoke the "reasonably related" doctrine when the factual allegations made in the administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised. For example, in Deravin, we concluded

_____

[6] We have said that the "reasonably related" doctrine "is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering." Deravin, 335 F.3d at 201 (citation, internal quotation marks, and brackets omitted); cf. Fed. Express Corp. v. Holowecki, 128 S. Ct. 1147, 1160 (2008) ("Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies.").

that the plaintiff's race discrimination claim was reasonably related to his EEOC charge of national-origin discrimination because, "read liberally, allegations by an African-American employee that employees of Irish descent are receiving preferential treatment implicitly suggests some form of potential racial discrimination in addition to an illegitimate preference premised on national origin." Deravin, 335 F.3d at 202. Similarly, in Williams, we decided that an EEOC charge alleging retaliation was "reasonably related" to a later-articulated claim of sex discrimination because the detailed narrative of the EEOC charge unmistakably referred to sexual harassment: "[B]ecause the factual underpinnings of a gender discrimination claim were presented in the complaint made to the EEOC, it was error to dismiss [plaintiff's] claim for failure to exhaust her administrative remedies." Williams, 458 F.3d at 71. Here, by contrast, the plaintiff's EEO filing did not give the Postal Service "adequate notice," id. at 70 (citation and internal quotation marks omitted), nor did it contain the "factual underpinnings," id. at 71, of a hostile work environment or retaliation claim.

In a not unrelated context, the Supreme Court has described hostile work environment claims as follows:

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single

14

act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts.

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002) (citations omitted). The plaintiff's administrative complaint contains no reference to repeated conduct or the cumulative effect of individual acts. To the contrary, his EEO complaint recounts nothing more than a single act of physical and verbal abuse. Although this adequately exhausts a discrimination claim based on this single act of abuse, we conclude that the plaintiff's claim that Sacco subjected him to a hostile work environment by verbally harassing him since 1999 and denying him lunch breaks and assistance with his work was properly dismissed for failure to comply with the exhaustion requirement.

As for the plaintiff's retaliation claim, the plaintiff asserts in the present action that Sacco's conduct on September 29, 2003, was in retaliation for having previously complained about Sacco's "unprofessional and discriminatory conduct." Am. Compl. ¶ 12. This claim does not fit within the "reasonably related" exception to the exhaustion doctrine either. The plaintiff's EEO complaint contains no factual allegations sufficient to alert the EEO to the possibility that Sacco's assault was the product of a retaliatory motive.[7]

---

[7] This is not a case in which the plaintiff alleges retaliation for filing the very EEO charge that served to exhaust the plaintiff's other claims. See Terry, 336 F.3d at 151 (recognizing that the exhaustion requirement is relaxed in such cases). The plaintiff did not file an EEO complaint until after

(continued...)

15

## B.   Prima Facie Case

At the summary-judgment stage, properly exhausted Title VII claims are ordinarily analyzed under the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  At the first stage of the McDonnell Douglas analysis, the plaintiff bears the burden of establishing a prima facie case of discrimination by showing that: "1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  Terry, 336 F.3d at 138.  The plaintiff's burden of proof at the prima facie stage "is not onerous."  Burdine, 450 U.S. at 253.

Here, it is undisputed that the plaintiff belongs to a protected class and was qualified for his position at the postal facility.  The first two prongs of the McDonnell Douglas inquiry are therefore satisfied, and we turn to the remaining two.

### 1.   Sacco's Aggressive Conduct Toward Plaintiff.

We agree with the district court that the plaintiff's "asserted treatment at the hands of Ron Sacco on September 29 -- while unprofessional and boorish -- and the initially dismissive

---

[7](...continued)
his encounter with Sacco on September 29, 2003, so he cannot argue (nor does he) that Sacco's conduct was in retaliation for filing the EEO complaint.

16

attitude of other supervisors when Sacco's behavior was brought to their attention, does not amount to an 'adverse employment action' . . . ." Mathirampuzha, 2006 WL 2458669, at *7, 2006 U.S. Dist. LEXIS 62738, at *22.

An adverse employment action is "a materially adverse change in the terms and conditions of employment." Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (emphasis added; citation and internal quotation marks omitted).

> To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

Id. (citation, internal quotation marks, and ellipsis omitted). Only in limited circumstances does a single, acute incident of abuse qualify as an adverse employment action. In the context of hostile work environment claims, we have stated that a single event, if "extraordinarily severe," could alter the conditions of a working environment. Howley v. Town of Stratford, 217 F.3d 141, 153 (2d Cir. 2000) (citation and internal quotation marks omitted). A "single incident of rape," for example, "'sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability'" for sex-based discrimination. Ferris v. Delta Air Lines, Inc., 277 F.3d 128, 136 (2d Cir. 2001) (quoting

17

Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)), cert. denied, 537 U.S. 824 (2002). But we require that the incident constitute an "intolerable alteration" of the plaintiff's working conditions, Howley, 217 F.3d at 154, so as to substantially interfere with or impair his ability to do his job, see Mormol v. Costco Wholesale Corp., 364 F.3d 54, 59 (2d Cir. 2004).

We conclude, in light of that authority, that Sacco's aggressive conduct toward the plaintiff on September 29, 2003, was not an adverse employment action. After the incident took place, the plaintiff continued to work at the Wallingford plant in the same position, at the same pay, and with the same responsibilities. Indeed, there is no evidence that the assault brought lasting harm to the plaintiff's ability to do his job. The physical encounter itself, while understandably upsetting, was not so severe as to alter materially the plaintiff's working conditions -- unlike, for example, a rape, see Ferris, 277 F.3d at 136, or an obscene and humiliating verbal tirade that undermines the victim's authority in the workplace, see Howley, 217 F.3d at 154. The Postal Service's response to the incident, moreover, while not immediate, ultimately ameliorated the plaintiff's working conditions, as Sacco was eventually disciplined and transferred to another work assignment for at least one year. Although a more severe incident of harassment or abuse could constitute an adverse employment action, the brief

18

incident in this case, however regrettable, does not meet the "extraordinarily severe" standard. The plaintiff has therefore failed to establish a prima facie case of employment discrimination based on that event.

### 2. The Denial of Plaintiff's Requests for a Transfer.

The plaintiff's transfer requests were denied several times, but there is no evidence in the record that anyone who was responsible for rejecting those transfer requests harbored a discriminatory motive toward the plaintiff or acted with a discriminatory intent. The plaintiff therefore has failed to satisfy the fourth part of the McDonnell Douglas test for establishing a prima facie case: that the adverse employment action, if any, "occurred under circumstances giving rise to an inference of discriminatory intent." Terry, 336 F.3d at 138.[8]

It is true that during the incident of September 29, 2003, Sacco threatened the plaintiff with respect to his desire to transfer to Hartford. But Sacco was not the plaintiff's direct superior, and the plaintiff has pointed to no evidence in the record, nor have we found any, that Sacco had anything to do with whether or not the plaintiff was transferred to Hartford as

---

[8]The Postal Service does not argue on appeal that the plaintiff failed to exhaust his claim regarding the denial of his transfer requests or failed to raise such a claim in his amended complaint. We therefore deem those arguments waived and consider on the merits whether the plaintiff has established a prima facie case of discrimination based on the denial of his transfer requests. See Francis v. City of New York, 235 F.3d 763, 766 (2d Cir. 2000); Cruz v. Coach Stores, Inc., 202 F.3d 560, 569-70 & n.5 (2d Cir. 2000).

19

he wished. The fact that Sacco might have harbored discriminatory views toward the plaintiff is therefore irrelevant to the claim regarding denial of transfer.

The district court concluded that the Post Office's rejection of plaintiff's requests for a transfer to the postal facility in Hartford did not amount to an "adverse employment action," Mathirampuzha, 2006 WL 2458669, at *7, 2006 U.S. Dist. LEXIS 62738, at *21-*22, and that the plaintiff therefore failed to meet his burden with respect to the third part of the McDonnell Douglas test. Terry, 336 F.3d at 138. There is, indeed, some support for that conclusion in our case law. See generally Beyer v. County of Nassau, 524 F.3d 160, 164 (2d Cir. 2008) ("A denial of a transfer may . . . constitute an adverse employment action, but we require a plaintiff to proffer objective indicia of material disadvantage; subjective, personal disappointment is not enough." (citation, internal quotation marks and brackets omitted)); Williams v. R.H. Donnelley Corp., 368 F.3d 123, 128 (2d Cir. 2004) (concluding that the denial of an employee's request for transfer is not an adverse employment action unless the denial "created a materially significant disadvantage in her working conditions"). Because we conclude that Sacco had no responsibility for the transfer, and that the evidence does not support an inference that the other defendant, or his agents who were responsible for declining the plaintiff's requests for a transfer, acted in a way that could reasonably give rise to an inference of discriminatory intent, we do not

20

reach the question of whether the failure to transfer the plaintiff to Hartford was or was not an adverse employment action.

### III. Plaintiff's Federal Tort Claims

### A. Framework for Analysis

The FTCA waives the sovereign immunity of the United States for certain torts committed by federal employees, including Postal Service employees, within the scope of their employment.  Dolan v. U.S. Postal Serv., 546 U.S. 481, 484-85 (2006); see 28 U.S.C. § 2674; 39 U.S.C. § 409(c).  When the tort victim is also a federal employee, however, work-related injuries are compensable only under the FECA.[9]  See 5 U.S.C. § 8116(c);[10] Votteler v. United States, 904 F.2d 128, 130 (2d Cir.) ("FECA is

---

[9] Postal employees are federal employees for FECA purposes. 39 U.S.C. § 1005(c).

[10] Section 8116(c) provides, in pertinent part:

> The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

5 U.S.C. § 8116(c) (emphasis added).

21

the exclusive remedy for work-related injuries sustained by federal employees." (citation omitted)), cert. denied, 498 U.S. 1000 (1990).  As the Supreme Court has explained:

> FECA's exclusive liability provision . . . was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise –- the "quid pro quo" –- commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 193-94 (1983).

Congress has vested the Secretary of Labor or her delegate with exclusive authority to "administer[] and decide all questions arising under" the FECA, 5 U.S.C. § 8145, and federal courts are barred from exercising judicial review over such decisions, id. § 8128(b).[11]  Because the FECA is an "exclusive"

---

[11] Section 8128(b) provides:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is --

> > (1) final and conclusive for all purposes and with respect to all questions of law and fact; and

> > (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b).  But cf. United States v. Sforza, 326 F.3d
(continued...)

22

remedy, id. § 8116(c), it deprives federal courts of subject-matter jurisdiction to adjudicate claims brought under the FTCA for workplace injuries that are covered by the FECA. See Granade v. United States, 356 F.2d 837, 840 (2d Cir. 1966), cert. denied, 385 U.S. 1012 (1967).

The plaintiff acknowledges that if a claim is covered by the FECA, he cannot recover under the FTCA. But he argues that he has asserted a claim for damages for emotional distress as well as for physical injuries resulting from his confrontation with Sacco and that the FECA does not "cover" damages for emotional distress. He contends, therefore, that his FTCA claim is not precluded. The plaintiff's argument raises a question of first impression for us: Who decides whether a claim is within the scope of FECA coverage: the Secretary of Labor, or the federal district court asked to adjudicate the claim under the FTCA?

We agree with the majority of circuits to have addressed this question that where there is a substantial question of FECA coverage -- indeed, unless it is certain that the FECA does not cover the type of claim at issue -- the district court may not entertain the FTCA claim. See Gill v. United States, 471 F.3d 204, 206 (1st Cir. 2006), cert. denied,

---

[11](...continued)
107, 111-15 (2d Cir. 2003) (holding that section 8128(b) does not deprive courts of jurisdiction over government's False Claims Act suit seeking recoupment of fraudulently obtained disability benefits).

23

128 S. Ct. 45 (2007); Tippetts v. United States, 308 F.3d 1091, 1094 (10th Cir. 2002); Noble v. United States, 216 F.3d 1229, 1235 (11th Cir. 2000); Bennett v. Barnett, 210 F.3d 272, 277 (5th Cir.), cert. denied, 531 U.S. 875 (2000); McDaniel v. United States, 970 F.2d 194, 198 (6th Cir. 1992) (per curiam); DiPippa v. United States, 687 F.2d 14, 16 (3d Cir. 1982); Wallace v. United States, 669 F.2d 947, 951 (4th Cir. 1982); Daniels-Lumley v. United States, 306 F.2d 769, 771 (D.C. Cir. 1962). If there is a substantial question of FECA coverage, only the Secretary of Labor or her delegate may decide whether the FECA applies. If the Secretary determines that the plaintiff's claim is fundamentally outside the scope of the FECA, then the claim may proceed under the FTCA in district court.[12] Conversely, "the courts have no jurisdiction over FTCA claims where the Secretary determines that FECA applies." Sw. Marine, Inc. v. Gizoni, 502 U.S. 81, 90 (1991).

Only the Ninth Circuit has taken the position the plaintiff would have us adopt here -- that a federal court

---

[12] The Secretary must determine that the claim categorically falls outside the scope of the FECA's coverage -- in other words, that the claim is not the type of claim covered by the FECA. The plaintiff may not proceed under the FTCA if the claim fails for lack of proof. See Bennett, 210 F.3d at 277. "So long as the injury is of the type intended to be covered by FECA, the fact that no actual compensation was awarded is irrelevant." McDaniel, 970 F.2d at 197. To the extent the plaintiff argues that he should be able to proceed under the FTCA because the FECA, though it may cover his claim, does not compensate for pain and suffering, this argument is without merit. See Noble, 216 F.3d at 1234; Votteler, 904 F.2d at 130; Balancio v. United States, 267 F.2d 135, 137-38 (2d Cir. 1959).

24

decides the threshold question whether the type of injury alleged falls within the scope of FECA coverage, whereas the Secretary of Labor decides the unreviewable question whether the claimant is to receive compensation.  See Moe v. United States, 326 F.3d 1065, 1068 (9th Cir.), cert. denied, 540 U.S. 877 (2003); Figueroa v. United States, 7 F.3d 1405, 1407-08 (9th Cir. 1993), cert. denied, 511 U.S. 1030 (1994); Sheehan v. United States, 896 F.2d 1168, 1173-74 (9th Cir.), amended, 917 F.2d 424 (9th Cir. 1990).  That court has reasoned that the FECA's "[s]cope . . . is a question that must be answered by the federal courts, because it is one of jurisdiction."  Moe, 326 F.3d 1068.

We see little basis for that view.  Congress may limit its waiver of sovereign immunity by vesting exclusive jurisdiction over certain claims against the government in administrative agencies.  See N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 67-70 & n.18 (1982) (plurality) (discussing the "public rights" doctrine).  And we defer to agencies' reasonable interpretations of ambiguous language in the statutes they administer, including the scope of those statutes and the types of claims they cover.  See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." (footnote omitted)); see also Miss. Power & Light Co. v. Mississippi ex rel. Moore, 487 U.S.

25

354, 381 (1988) (Scalia, J., concurring) ("[I]t is settled law that the rule of deference applies even to an agency's interpretation of its own statutory authority or jurisdiction." (collecting cases)).  We therefore conclude that the Secretary of Labor may determine what types of claims fall within the scope of FECA coverage.[13]  And because liability under the FECA is exclusive, our subject-matter jurisdiction ends where FECA coverage begins.

That said, we doubt whether, as some Courts of Appeals

---

[13] Although we recognize that the Secretary's decision regarding FECA coverage -- unlike most administrative decisions to which courts owe <u>Chevron</u> deference -- seems to be unreviewable, <u>see</u> 5 U.S.C. § 8128(b), we do not think that difference is dispositive.  First, "Congress is not barred from acting pursuant to its powers under Article I to vest decisionmaking authority in . . . [administrative agencies] with limited or no review by Article III courts."  <u>Thomas v. Union Carbide Agric. Prods. Co.</u>, 473 U.S. 568, 583 (1985); <u>see</u> <u>Blanc v. United States</u>, 244 F.2d 708, 710 (2d Cir.) (per curiam) (applying that principle to FECA claims), <u>cert. denied</u>, 355 U.S. 874 (1957).  Second, in an action that begins as a FTCA claim in federal court, the Secretary's discretion in construing the scope of the FECA is cabined before, rather than after, the final agency decision:  Courts need not refer FTCA claims to the Secretary of Labor unless there is a "substantial question" of FECA coverage.

We note, too, that several appellate courts have held that "an implicit and narrow exception to the bar on judicial review exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate."  <u>Hanauer v. Reich</u>, 82 F.3d 1304, 1307 (4th Cir. 1996); <u>see also</u> <u>Brumley v. U.S. Dep't of Labor</u>, 28 F.3d 746, 747 (8th Cir. 1994) (per curiam), <u>cert. denied</u>, 513 U.S. 1082 (1995); <u>Woodruff v. U.S. Dep't of Labor</u>, 954 F.2d 634, 639 (11th Cir. 1992) (per curiam); <u>Staacke v. U.S. Sec'y of Labor</u>, 841 F.2d 278, 281 (9th Cir. 1988).  We have previously declined to decide whether we would recognize that exception, <u>Senerchia v. United States</u>, 235 F.3d 129, 131-32 (2d Cir. 2000), and we have no need to address that issue today.

have said, the mere existence of a substantial question of FECA coverage deprives us of subject-matter jurisdiction over FTCA claims. See Gill, 471 F.3d at 207-08; Wright v. United States, 717 F.2d 254, 257 (6th Cir. 1983). FECA liability is exclusive, 5 U.S.C. § 8116(c), but the FTCA is an unambiguous waiver of sovereign immunity where the FECA does not apply.[14] Therefore, although district courts must permit the Secretary of Labor to determine whether the FECA applies whenever an FTCA claim raises a substantial question of FECA coverage, the courts do not immediately lose subject-matter jurisdiction over the case. For if the Secretary determines that the type of claim involved does not implicate the FECA, then the FTCA claim may proceed. See Noble, 216 F.3d at 1235; White v. United States, 143 F.3d 232, 239 (5th Cir. 1998); McDaniel, 970 F.2d at 198; DiPippa, 687 F.2d at 20. "[T]he courts have no jurisdiction over FTCA claims where the Secretary determines that FECA applies." Sw. Marine, 502 U.S. at 90 (emphasis added). Even in situations where the district court deems it highly unlikely that the claim falls outside the scope of the FECA, subject-matter jurisdiction over the case remains with the court until the Secretary has made that determination.

Our conclusion in this regard is informed by the Supreme Court's discussion in Southwest Marine of the

---

[14] Assuming, of course, the FTCA's other enumerated exceptions, see 28 U.S.C. § 2680, also do not apply.

27

relationship between FECA and the FTCA in the context of the so-called "primary jurisdiction" doctrine. <u>Id.</u>

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

<u>United States v. W. Pac. R.R. Co.</u>, 352 U.S. 59, 63-64 (1956); <u>see also</u> <u>Reiter v. Cooper</u>, 507 U.S. 258, 268 (1993) ("Referral of the issue to the administrative agency does not deprive the court of jurisdiction . . . ."). We think the doctrine of primary jurisdiction establishes a helpful framework for the treatment of FTCA claims that raise a substantial question of FECA coverage.

B.   <u>Plaintiff's FTCA Claims</u>

With these principles in mind, we turn to the district court's treatment of the plaintiff's claims under the FTCA. The plaintiff argues that his FTCA claim for emotional distress should go forward because the FECA does not cover such claims. But unless it is clear that the FECA does not cover the type of claim at issue, there is a substantial question of FECA coverage.

See, e.g., DiPippa, 687 F.2d at 16. It is not difficult to find examples of FECA coverage for claims of emotional distress, psychological injuries, and the like. See, e.g., Spinelli v. Goss, 446 F.3d 159, 161 (D.C. Cir. 2006); Tippetts, 308 F.3d at 1094-95; Swafford v. United States, 998 F.2d 837, 838 (10th Cir. 1993); McDaniel, 970 F.2d at 197; Doe v. United States, 914 F. Supp. 945, 950 (W.D.N.Y. 1996). The district court therefore determined that the plaintiff's emotional-distress claim raised a substantial question of FECA coverage, Mathirampuzha, 2006 WL 2458669, at *8, 2006 U.S. Dist. LEXIS 62738, at *26, and we agree.

We conclude that the district court erred, however, in dismissing the plaintiff's FTCA emotional-distress claim for lack of jurisdiction. The district court did not lose jurisdiction, because the event that would have divested the court of jurisdiction -- a determination by the Secretary of Labor that the plaintiff's emotional-distress claim was covered by the FECA -- did not occur. The proper course was therefore to stay the proceedings, hold the claim in abeyance, or otherwise maintain the case on the court's inactive docket so that the plaintiff could file a FECA claim and await a determination by the Secretary regarding FECA coverage. See Tippetts, 308 F.3d at 1095; Noble, 216 F.3d at 1235; White, 143 F.3d at 239; McDaniel, 970 F.2d at 197-98; DiPippa, 687 F.2d at 20; Doe, 914 F. Supp. at 950.

29

In some cases involving the primary jurisdiction doctrine, the district court has discretion to dismiss the case without prejudice while the relevant issue is referred to and considered by the administrative agency. See Reiter, 507 U.S. at 268-69. But dismissal without prejudice is permitted only "if the parties would not be unfairly disadvantaged." Id. at 268. We think there is a significant danger of unfair disadvantage here inasmuch as the plaintiff's claim is subject to a statute of limitations. See Carnation Co. v. Pac. Westbound Conference, 383 U.S. 213, 223 (1966) (contrasting suits for injunctive relief, which "could easily be reinstituted" at any time, with "damage action[s] for past conduct," which "are likely to be [time-]barred by the time the [agency] acts"). By the time the Secretary of Labor determines that a claim is not covered under the FECA, it may be too late to reinstitute an action for damages under the FTCA.[15] See White, 143 F.3d at 239. "To avoid statute of limitations problems, the district court should stay proceedings in the action until the Secretary resolves the question of FECA coverage." DiPippa, 687 F.2d at 20.

At oral argument, we were told that the plaintiff had filed a FECA claim during the pendency of this appeal, that the claim was denied as untimely, and that the denial of the claim is on appeal within the administrative agency. We have also learned, based on the parties' supplements to the record, that

---

[15] The statute of limitations under the FTCA is two years. 28 U.S.C. § 2401(b).

30

the administrative decision denying the plaintiff's FECA claim did not comment on whether the claim was otherwise covered under the statute.  Should the Secretary's final decision deny the plaintiff's FECA claim on grounds of untimeliness without comment regarding whether the claim is otherwise covered by the FECA, then dismissal without prejudice would be appropriate and would result in no "unfair disadvantage" to the plaintiff.  The burden of demonstrating subject-matter jurisdiction lies with the party asserting it, see Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007), as does the burden of filing a timely FECA claim, see ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 887 (2d Cir. 1988) ("The failure to seek . . . relief on a timely basis may, in some instances, lead to a harsh result, but the harshness of the default is largely a self-inflicted wound." (citation and internal quotation marks omitted)).  If the Secretary decides only that the plaintiff's FECA claim is untimely, then the plaintiff will have failed to establish that his claim is not covered by the FECA.

If, however, the Secretary's final decision dismisses the plaintiff's FECA claim on the ground that, even if it had been timely filed and its allegations fully proven, the plaintiff could not recover under the FECA because his claim is of a type not covered by that statute, then the plaintiff should be able to pursue his FTCA claim in the district court.  We do not, of course, mean to suggest that there is merit to the plaintiff's FTCA claim, nor that we anticipate that the Secretary will decide

31

the plaintiff's FECA claim on any basis other than its timeliness. We conclude only that the question of coverage under the FECA, which may well preclude relief under the FTCA, should be decided by the Secretary first.

The portion of the district court's judgment dismissing the plaintiff's FTCA emotional-distress claim is therefore vacated. On remand, the district court should reinstate the FTCA claim and stay proceedings pending a final determination by the Secretary of Labor resolving the plaintiff's FECA claim.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed in part and vacated in part. This cause is remanded for further proceedings consistent with this opinion.